**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

---

|  |  |  |
|---|---|---|
| BAXALTA INCORPORATED, BAXALTA US INC., and NEKTAR THERAPEUTICS, | ) ) ) ) | |
| Plaintiffs and Counterclaim Defendants, | ) ) ) ) | C.A. No. 17-1316-RGA-SRF CONSOLIDATED |
| v. | ) ) | **REDACTED PUBLIC VERSION** |
| BAYER HEALTHCARE LLC, | ) ) ) | |
| Defendant and Counterclaim Plaintiff. | ) ) ) | |

---

**OPENING BRIEF IN SUPPORT OF PLAINTIFFS' CONSOLIDATED
MOTION TO DISMISS AND TO STRIKE CERTAIN COUNTERCLAIMS
AND AFFIRMATIVE DEFENSES IN BAYER'S AMENDED ANSWERS AND
<u>COUNTERCLAIMS OR, IN THE ALTERNATIVE, TO BIFURCATE THOSE ISSUES</u>**

*Of Counsel:*

Edgar H. Haug
Angus Chen
Porter F. Fleming
Richard F. Kurz
Erika V. Selli
Haug Partners LLP
745 Fifth Avenue
New York, New York 10151
Tel: (212) 588-0800
ehaug@haugpartners.com
achen@haugpartners.com
pfleming@haugpartners.com
rkurz@haugpartners.com
eselli@haugpartners.com

Frederick L. Cottrell, III (#2555)
Kelly E. Farnan (#4395)
Nicole K. Pedi (#6236)
Richards, Layton & Finger, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Tel: (302) 651-7700
cottrell@rlf.com
farnan@rlf.com
pedi@rlf.com

*Attorneys for Plaintiffs
Baxalta Inc., Baxalta US Inc.,
and Nektar Therapeutics*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ iii

I.      INTRODUCTION ...................................................................................................1

II.     NATURE AND STAGE OF THE PLEADINGS.....................................................2

        A.      The Bossard Action......................................................................................2

        B.      The Bentley Action ......................................................................................3

III.    SUMMARY OF THE ARGUMENT .....................................................................3

IV.     STATEMENT OF FACTS .....................................................................................5

V.      LEGAL STANDARD.............................................................................................6

VI.     BAYER FAILS TO STATE AN INEQUITABLE-CONDUCT CLAIM ...........................7

        A.      Bayer Fails to Plead Inequitable Conduct with the Requisite
                Particularity Under Rule 9(b).......................................................................8

                1.      Bayer Fails to Plead the "Who" and "When" with
                        Particularity for the Allegedly Concealed Information ..............................8

                2.      Bayer Fails to Plead the "Who," "How," and "What" with
                        Particularity for the Allegedly False Statements .....................................10

                3.      Bayer Fails to Plead Sufficient Facts to Support Intent to
                        Deceive .....................................................................................................12

                        a.      Bayer Fails to Plead Facts Sufficient to Show that
                                Any Specific Individual Had Knowledge of
                                Materiality......................................................................................12

                        b.      Bayer Fails to Plead Facts Sufficient to Infer a
                                Specific Intent to Deceive the PTO ..............................................13

        B.      Bayer Fails to Plead Inequitable Conduct Concerning the Other
                Bossard/Bentley Patents with Requisite Particularity Under Rule
                9(b)..............................................................................................................14

        C.      Bayer Fails to Adequately Plead that Drs. Harris and Charles
                Owed a Duty of Candor to the PTO...........................................................16

VII.    BAYER FAILS TO STATE A *WALKER PROCESS* ANTITRUST
        CLAIM........................................................................................................................17

i

A.    Bayer Fails to State a *Walker Process* Fraud Claim ...........................................19

    1.    Bayer Fails to Adequately Plead Fraud on the PTO ................................19

    2.    Bayer Fails to Plead Knowledge by Baxalta........................................20

B.    Bayer Fails to Allege Attempted Monopolization ................................................21

    1.    Bayer Fails to Allege a Dangerous Probability of Achieving Monopoly Power in the Relevant Product Market ...................................21

        a.    Bayer Fails to Adequately Define a Relevant Product Market.......................................................................22

        b.    Bayer Fails to Adequately Plead Dangerous Probability of Monopolization......................................................23

        c.    Enforcing Patents Does Not Constitute Attempted Monopolization.................................................................24

        d.    Bayer's Pleading Exhibits Demonstrate No Dangerous Probability of Monopolization.................................25

    2.    Bayer Fails to Allege that Nektar Is a Market Participant.........................26

    3.    Bayer Fails to Adequately Plead a Claim for Antitrust Injury.................................................................................................27

VIII.    BAYER'S ADDITIONAL COUNTERCLAIMS AND AFFIRMATIVE DEFENSES BASED ON INEQUITABLE CONDUCT SHOULD BE DISMISSED FOR THE SAME REASONS .................................................................28

IX.    IN THE ALTERNATIVE, THE INEQUITABLE-CONDUCT, UNCLEAN-HANDS, AND *WALKER PROCESS* ISSUES SHOULD BE BIFURCATED ............................................................................................................29

X.    CONCLUSION.......................................................................................................30

ii

**TABLE OF AUTHORITIES**

**Cases**

*Abbott Labs. v. Brennan*,
    952 F.2d 1346 (Fed. Cir. 1991) ........................................................................... 25

*Acme Mkts. v. Wharton Hardware & Supply Corp.*,
    890 F. Supp. 1230 (D.N.J. 1995) ......................................................................... 27

*Alza Corp. v. Par Pharm., Inc.*,
    No. 13-1104, 2014 U.S. Dist. LEXIS 71635
    (D. Del. May 27, 2014) ......................................................................... 8, 9, 10, 16, 17

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ................................................................................................. 6

*Avid Identification Sys., Inc. v. Crystal Imp. Corp.*,
    603 F.3d 967 (Fed. Cir. 2010) ........................................................................ 16, 17

*Barr Labs., Inc. v. Abbott Labs.*,
    978 F.2d 98 (3d Cir. 1992) ............................................................................... 21, 23

*Bocobo v. Radiology Consultants of S. Jersey, P.A.*,
    305 F. Supp. 2d 422 (D.N.J. 2004) ..................................................................... 28

*C.R. Bard, Inc. v. M3 Sys. Inc.*,
    157 F.3d 1340 (Fed. Cir. 1998) ........................................................................... 25

*Catch Curve, Inc. v. Integrated Glob. Concepts, Inc.*,
    No. 06-2199, 2011 WL 13146740
    (N.D. Ga. Sept. 1, 2011) ....................................................................................... 20

*Cephalon, Inc. v. Slayback Pharma LLC*,
    No. 17-1154, 2019 WL 3497105
    (D. Del. Aug. 1, 2019) ........................................................................................... 28

*Compliance Mktg. v. Drugtest, Inc.*,
    No. 09-1241, 2010 WL 1416823
    (D. Colo. Apr. 7, 2010) ......................................................................................... 26

*Crossroads Cogeneration Corp. v. Orange & Rockland Utils. Inc.*,
    159 F.3d 129 (3d Cir. 1998) ................................................................................. 23

*Discon, Inc. v. NYNEX Corp.*,
    93 F.3d 1055 (2d Cir. 1996), *vacated on other grounds by*
    *NYNEX Corp. v. Discon, Inc.*, 525 U.S. 128 (1998) ......................................... 26

iii

*Drew Techs., Inc. v. Robert Bosch, L.L.C.*,
No. 12-15622, 2014 WL 562458
(E.D. Mich. Feb. 13, 2014) ........................................................................................ 9

*Emerson Elec. Co. v. Suzhou Cleva Elec. Appliance Co.*,
No. 13-1043, 2014 WL 3600380
(E.D. Mo. July 22, 2014) ..................................................................................... 9, 11

*Eurand Inc. v. Mylan Pharm. Inc.*,
No. 08-889, 2009 WL 3172197
(D. Del. Oct. 1, 2009) ............................................................................................. 29

*Exergen Corp. v. Wal-Mart Stores, Inc.*,
575 F.3d 1312 (Fed. Cir. 2009) ............................................ 7, 8, 10, 11, 12, 13, 14

*Fowler v. UPMC Shadyside*,
578 F.3d 203 (3d Cir. 2009) ..................................................................................... 7

*Genetic Sys. Corp. v. Abbott Labs.*,
691 F. Supp. 407 (D.D.C. 1988) ............................................................................. 26

*IBM Corp. v. Priceline Grp., Inc.*,
No. 15-137, 2017 WL 1349175
(D. Del. Apr. 10, 2017) .................................................................................. 8, 14, 15

*ID Sec. Sys. Can., Inc. v. Checkpoint Sys., Inc.*,
249 F. Supp. 2d 622 (E.D. Pa. 2003) ...................................................................... 26

*Ill. Tool Works Inc. v. Indep. Ink, Inc.*,
547 U.S. 28 (2006) ................................................................................................... 25

*In re Indep. Serv. Orgs. Antitrust Litig.*,
203 F.3d 1322 (Fed. Cir. 2000) ............................................................................... 25

*In re Wellbutrin XL Antitrust Litig.*,
868 F.3d 132 (3d Cir. 2017) .................................................................................... 20

*Invista N. Am. S.À.R.L. v. M&G USA Corp.*,
No. 11-1007, 2013 U.S. Dist. LEXIS 77685 (D. Del. May 3, 2013),
*adopted by* 2013 U.S. Dist. LEXIS 76205 (D. Del. May 30, 2013) .................. 11, 13

*Khoja v. Orexigen Therapeutics, Inc.*,
899 F.3d 988 (9th Cir. 2018) .................................................................................. 26

*Metoprolol Succinate Patent Litig. v. KV Pharm. Co.*,
494 F.3d 1011 (Fed. Cir. 2007) ............................................................................... 14

iv

*Minebea Co. v. Papst,*
    444 F. Supp. 2d 68 (D.D.C. 2006) ...................................................................... 24, 27

*Murphy v. Office of Disciplinary Counsel,*
    No. 17-1239, 2019 WL 4752059
    (E.D. Pa. Sept. 30, 2019) ...................................................................................... 18

*Nobelpharma AB v. Implant Innovations, Inc.,*
    141 F.3d 1059 (Fed. Cir. 1998)............................................................................ 19

*Novak v. Somerset Hosp.,*
    625 F. App'x 65 (3d Cir. 2015) ............................................................................ 22

*Pac. Biosciences of Cal., Inc. v. Oxford Nonopore Techs., Inc.,*
    No. 17-1353, 2019 WL 668843
    (D. Del. Feb. 19, 2019) ........................................................................................ 20

*Pastore v. Bell Tel. Co. of Pa.,*
    24 F.3d 508 (3d Cir. 1994).................................................................................... 26

*Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.,*
    No. 08-309, 2009 WL 4928024
    (D. Del. Dec. 18, 2009)......................................................................................... 15

*Prof'l Real Estate Inv'rs, Inc. v. Columbia Pictures Indus.,*
    508 U.S. 49 (1993)................................................................................................ 19

*Queen City Pizza v. Domino's Pizza,*
    124 F.3d 430 (3d Cir. 1997).............................................................................. 22, 23

*Ragner Tech. Corp. v. Berardi,*
    324 F. Supp. 3d 491 (D.N.J. 2018) ...................................................................... 22

*Robocast, Inc. v. Apple Inc.,*
    39 F. Supp. 3d 552 (D. Del. 2014)........................................................................ 16

*Senju Pharm. Co. v. Apotex, Inc.,*
    921 F. Supp. 2d 297 (D. Del. 2013)............................................................ 7, 8, 10, 12, 29

*SenoRx, Inc. v. Hologic, Inc.,*
    920 F. Supp. 2d 565 (D. Del. 2013)...................................................................... 29

*Siegler v. Sorrento Therapeutics, Inc.,*
    No. 18-1681, 2019 WL 581719
    (S.D. Cal. Feb. 13, 2019) ..................................................................................... 28

*Spectrum Sports v. McQuillan,*
    506 U.S. 447 (1993)........................................................................................... 18, 22

*Speedplay, Inc. v. Bebop, Inc.*,
   211 F.3d 1245 (Fed. Cir. 2000).................................................................................... 14

*Sprint Commc'ns Co., L.P. v. Charter Commc'ns, Inc.*,
   No. 17-1734, 2019 WL 1082067
   (D. Del. Mar. 7, 2019)................................................................................ 18, 20, 27, 28

*Sun Microsystems, Inc. v. Versata Enters.*,
   630 F. Supp. 2d 395 (D. Del. 2009)................................................................................ 22

*Teva Pharm. Indus., Ltd. v. Apotex, Inc.*,
   No. 07-5514, 2008 WL 3413862 (D.N.J. Aug. 7, 2008) .................................................. 23

*TransWeb, LLC v. 3M Innovative Props. Co.*,
   812 F.3d 1295 (Fed. Cir. 2016)........................................................................... 20, 27, 28

*Tyco Healthcare Grp. LP v. Mut. Pharm. Co.*,
   762 F.3d 1338 (Fed. Cir. 2014)..................................................................................... 20

*Walker Process Equip., Inc. v. Food Mach. & Chem. Corp.*,
   382 U.S. 172 (1965)............................................................... 18, 19, 20, 21, 22, 25

*XpertUniverse, Inc. v. Cisco Sys., Inc.*,
   868 F. Supp. 2d 376 (D. Del. 2012)........................................................................ 9, 11, 29

**Statutes**

15 U.S.C. § 15(a) ........................................................................................................... 27

15 U.S.C. § 2.................................................................................................................. 21

35 U.S.C. § 154(a)(1)...................................................................................................... 24

**Rules**

Fed. R. Civ. P. 12(b)(6)............................................................................................... 1, 29

Fed. R. Civ. P. 12(f)................................................................................................. 1, 4, 29

Fed. R. Civ. P. 42(b) ..................................................................................................... 29

Fed. R. Civ. P. 9(b) .......................................................................................... 3, 4, 9, 14, 20, 28

**Regulations**

37 C.F.R. § 1.56............................................................................................................ 16

## I.    INTRODUCTION

The allegations supporting Bayer's amended counterclaims and defenses concerning inequitable conduct ("IC") and unclean hands, and *Walker Process* fraud allegations do not meet the requisite heightened pleading standards for such claims.  Instead of pleading separate sets of operative facts in separate claims, Bayer's pleadings, asserted against two separate Nektar patent families, rely on a mishmash of alleged "facts" to plead 19 IC theories—lumping together conclusory allegations that fail to identify particular facts, actors, and/or theories.  Indeed, regarding its IC allegations, Bayer fails to adequately plead the requisite "who," "what," "when" and/or "how."  Bayer also fails to plead facts sufficient to support a plausible inference of intent to deceive.

Bayer's *Walker Process* antitrust allegations are likewise deficient.  Without support, Bayer alleges that Plaintiffs, by merely asserting the Nektar patents-in-suit, are engaging in attempted monopolization in violation of Section 2 of the Sherman Act.  Not only does Bayer fail to adequately plead fraud on the PTO, Bayer's antitrust allegations lack the basic facts necessary to state an attempted monopolization claim, namely failing to: (1) define a relevant product market; (2) state facts supporting a dangerous probability of achieving monopoly power; and (3) state an antitrust injury.

Accordingly, Plaintiffs move under Rules 12(b)(6) and 12(f) to dismiss Bayer's IC and unclean-hands counterclaims, and *Walker Process* fraud and antitrust allegations, and to strike the related affirmative defenses.[1]  Should the Court deny any part of Plaintiffs' motion, Plaintiffs

---

[1]As explained below, Bayer's unclean-hands counterclaims and *Walker Process* fraud allegations fall with Bayer's insufficiently pled IC counterclaims.  Further, Bayer's IC, unclean-hands, and *Walker Process* fraud affirmative defenses also fall with the insufficiently pled IC counterclaims.

respectfully request that the Court, under Rule 42(b), bifurcate the IC, unclean hands, and *Walker Process* issues.

## II.     NATURE AND STAGE OF THE PLEADINGS

Plaintiffs filed two patent-infringement actions against Bayer concerning Bayer's PEGylated Factor VIII product, Jivi® (BAY94-9027)—one asserting eight patents (C.A. 17-1316, the "Bossard Action"), and one asserting five patents (C.A. 18-1355, the "Bentley Action").  The Court consolidated the actions into the C.A. 17-1316 case.  (D.I. 132.)

### A.     The Bossard Action

The operative Second Amended Complaint in the Bossard Action was filed on September 4, 2019 (D.I. 281), alleging that Jivi® infringes eight patents: U.S. Patent Nos. 7,199,223 ("the '223 Patent"); 7,863,421; 8,143,378; 8,247,536; 8,519,102; 8,618,259; 8,889,831; and 9,999,657 (collectively, "the Bossard Patents"), which are generally directed to, *inter alia*, certain novel conjugates of poly(ethylene glycol) ("PEG") bound to Factor VIII, as well as compositions containing such conjugates.  On September 23, 2019, Bayer filed a Second Amended Answer and Counterclaims, adding declaratory counterclaims and affirmative defenses that the Bossard Patents are allegedly unenforceable due to IC and unclean hands.  (D.I. 301, CC ¶¶ 72-149.)  On October 11, 2019, the last day to amend pleadings, Bayer filed a Third Amended Answer and Counterclaims (D.I. 333, "Bossard CC"), adding *Walker Process* fraud and antitrust allegations. (Bossard CC ¶¶ 155-70.)  Bayer's IC, unclean-hands, and *Walker Process* fraud allegations are lumped together into broader counts for declaratory judgment of invalidity and unenforceability. *Id.* ¶¶ 173, 178, 183, 188, 193, 198, 203, 208.  Bayer does not provide any separate count for its alleged *Walker Process* antitrust violation.

## B.     The Bentley Action

The Complaint was filed on August 31, 2018 (C.A. 18-1355, D.I. 1), alleging that Jivi®

infringes five patents: U.S. Patent Nos. 7,026,440 ("the '440 Patent"); 7,872,072; 8,273,833;

8,809,453; and 9,187,569 (collectively, "the Bentley Patents"), which are generally directed to,

*inter alia*, certain branched reactive polymers possessing a defined chemical structure and

biologically active conjugates containing such polymers.  On October 11, 2019, the last day to

amend pleadings, Bayer sought leave to file an amended answer and counterclaims.  (D.I. 331.)

Plaintiffs consented, and the Amended Answer and Counterclaims was docketed on November 7,

2019.  (D.I. 381, "Bentley CC".)  Bayer adds declaratory counterclaims and affirmative defenses

that the Bentley Patents are unenforceable due to IC, unclean hands, and *Walker Process* fraud

and antitrust allegations.  (Bentley CC ¶¶ 75-180.)  Like the Bossard counterclaims, the IC,

unclean-hands, and *Walker Process* allegations are not separate counts (*see id.* ¶¶ 183, 189, 195,

201, 207), and there is no count for the alleged *Walker Process* antitrust violation.

## III.    SUMMARY OF THE ARGUMENT

Bayer's allegations of 19 theories of IC against a group of people, including inventors,

attorneys, and others, fail to satisfy the heightened pleading requirements of Rule 9(b).  For the

Bossard counterclaims, Bayer appears to allege four theories of concealed information, and six

theories of false statements to the PTO relating to the '223 Patent.  For the Bentley

counterclaims, Bayer appears to allege seven theories of concealed information, and two theories

of false statements to the PTO relating to the '440 Patent.  For each of its concealed-information

theories, Bayer fails to plead the specific "who" and "when."  For each of its false-statement

theories, Bayer fails to plead the specific "who," "how," and "what."  Bayer compounds these

deficiencies by failing to allege facts supporting an inference that any specific individual knew of

such concealed information or false statements, and then subsequently withheld or

3

misrepresented this information with a specific intent to deceive the PTO.  Each of Bayer's theories of IC, therefore, should be dismissed and stricken.

Bayer's IC allegations regarding the other Bossard/Bentley Patents fare no better.  Bayer bases its IC allegations solely on claim 1 of the Bossard '223 Patent and claim 1 of the Bentley '440 Patent, respectively.  Bayer fails to plead with particularity any alleged IC concerning the other seven Bossard and four Bentley Patents.  Further, Bayer fails to plead that any alleged IC from the '223/'440 Patents would infect the enforceability of the other Bossard/Bentley Patents.  By failing to show an "immediate and necessary relation" between the relevant patents, Bayer fails to plead infectious unenforceability.  Any one of these failures warrants dismissing and striking the alleged IC claims for the other Bossard/Bentley Patents.

Bayer's reliance on alleged acts or omissions by individuals with no substantive involvement in the prosecution of the Bossard/Bentley Patents should be rejected.  Bayer bases several IC theories on alleged acts/omissions of former Nektar employees Dr. Milton Harris and Dr. Stephen Charles, neither of whom are named inventors or patent attorneys.  Bayer fails to show that either was "substantively" involved in prosecution.  Thus, Bayer's allegations about Drs. Harris and Charles cannot support any alleged IC because neither individual had a duty to the PTO.

Bayer's *Walker Process* allegations should also be dismissed.  Initially, Bayer fails to plead fraud on the PTO, which itself is fatal to Bayer's *Walker Process* claims.  Bayer, therefore, also fails to plead anticompetitive conduct and specific intent.  Bayer further fails to define a relevant product market or to plead facts that would support a dangerous probability of monopolization by either Baxalta or Nektar.  Finally, Bayer fails to adequately allege an antitrust injury that it has suffered or will suffer as a result of attempted monopolization.

4

Bayer's unclean-hands counterclaims appear to rest on its IC allegations, and, as such, these counterclaims must be pled with the same specificity required under Rule 9(b). Bayer's IC pleading deficiencies thus necessitate that its unclean-hands counterclaims be dismissed. Similarly, Bayer's affirmative defenses concerning IC, unclean hands, and *Walker Process* fraud should be stricken under Rule 12(f) because they fall with the corresponding, improperly pled counterclaims.

Lastly, should the Court deny all or part of Plaintiffs' motion, Plaintiffs respectfully request that the IC, unclean hands, and *Walker Process* issues be bifurcated.

## IV.    STATEMENT OF FACTS

Hemophilia A is a rare congenital bleeding disorder caused by deficient or defective coagulation. (D.I. 281 ¶ 63.) Hemophilia A patients are afflicted with a deficiency of Factor VIII. *Id.* Several treatment options for hemophilia A exist, including both standard half-life and extended half-life (EHL) Factor VIII replacement products. Baxalta markets and sells several products used to treat hemophilia A, including ADYNOVATE®, an EHL product launched in 2015 that comprises PEGylated Factor VIII. *Id.* ¶¶ 64-65. Bayer launched its accused Jivi® product, another EHL PEGylated Factor VIII product, in September 2018. Other hemophilia A treatments are currently approved and available on the market. (*See* Bossard CC Exhibit 78.)

Since 1992, Nektar has been a pioneer in the development of advanced reactive PEG molecules. Nektar's patented PEGylation technology has enabled pharmaceutical companies that utilize its PEGylation platform to provide groundbreaking new products that address unmet patient needs, including Amgen's NEULASA®, Pfizer's SOMAVERT®, AstraZeneca and Daiichi Sankyo's MOVANTIK®, Roche's PEGASYS®, Bristol-Myers Squibb's DEFINITY®, Eyetech and Pfizer's MACUGEN®, Baxalta's ADYNOVATE®, and Bayer's Jivi®.

5

On November 7, 2001, Nektar filed U.S. Provisional Application No. 60/337,613. (C.A. 18-1355, D.I. 1 ¶ 10.) The application that led to the '440 Patent, which asserts a priority claim to this provisional, was filed on November 2, 2002, and the '440 Patent issued on April 11, 2006. *Id.* ¶¶ 11, 12. The four other Bentley Patents are separated from the '440 Patent by a divisional patent application that led to U.S. Patent No. 7,872,072. *Id.* ¶¶ 14-25. Each of the Bentley Patents is assigned to Nektar, and Baxalta licenses them from Nektar. *Id.* ¶¶ 13-25.

On February 26, 2003, Nektar filed U.S. Provisional Application No. 60/450,578 ("the Bossard Provisional"). (D.I. 281 ¶ 38.) The application that led to the '223 Patent, which asserts a priority claim to the Bossard Provisional, was filed on February 26, 2004, and the '223 Patent issued on April 3, 2007. *Id.* ¶¶ 39, 40. The seven other Bossard Patents are continuations of the '223 Patent, and all claim priority to the Bossard Provisional. *Id.* ¶¶ 42-62. Each of the Bossard Patents is assigned to Nektar, and Baxalta licenses them from Nektar. *Id.* ¶¶ 41-62.

## V.    LEGAL STANDARD

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).[2] This "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation," and "a formulaic recitation of the elements of a cause of action will not do." *Id.* "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.*

Analyzing a Rule 12(b)(6) motion requires a two-part analysis: first, the court must separate the factual and legal elements of a claim, accepting any well-pleaded facts as true, but disregarding any legal conclusions; second, the court must determine whether the facts alleged in

---

[2] All internal citations and quotations omitted, unless otherwise noted.

6

the complaint are sufficient to show that the plaintiff has a plausible claim for relief. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009). The court, however, "is not obligated to accept as true bald assertions, unsupported conclusions and unwarranted inferences, or allegations that are self-evidently false . . . ." *Senju Pharm. Co. v. Apotex, Inc.*, 921 F. Supp. 2d 297, 304 (D. Del. 2013).

## VI. BAYER FAILS TO STATE AN INEQUITABLE-CONDUCT CLAIM

Bayer fails to meet the stringent pleading standard for IC that the Federal Circuit set forth in *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1326 (Fed. Cir. 2009). There, the court held that IC allegations must meet the heightened pleading requirements of Rule 9(b) by "identify[ing] the specific who, what, when, where, and how of the material misrepresentation or omission committed before the PTO." *Id.* at 1328. "A pleading that simply avers the substantive elements of inequitable conduct, without setting forth the particularized factual bases for the allegation, does not satisfy Rule 9(b)." *Id.* at 1326-27. The pleading must also show that a specific individual: (1) knew of the withheld material information or of the falsity of the material misrepresentation; and (2) withheld or misrepresented this information with a specific intent to deceive the PTO. *Id.* at 1328-29.

Instead of pleading the requisite specifics, Bayer takes a jumbled approach, alleging 19 different IC theories—for the Bossard '223 Patent: four theories of allegedly concealed information and six of allegedly false statements; for the Bentley '440 Patent: seven theories of allegedly concealed information and two of allegedly false statements. Bayer fails to sort the particular facts and claims into separate sets of operative facts for any of its separate IC theories. *See Alza Corp. v. Par Pharm., Inc.*, No. 13-1104, 2014 U.S. Dist. LEXIS 71635, at *4-5 (D. Del. May 27, 2014) ("inadequacy of the pleadings has nothing to do with any dearth of factual basis . . . insufficiency of the present allegations is principally that they allege a mishmash of facts

7

without sorting them"). Bayer also fails to meet *Exergen's* requirements to adequately plead both the specifics of the purported IC—i.e., the "who," "when," "what," and/or "how"—as well as facts sufficient to support a reasonable inference of an intent to deceive the PTO. Accordingly, Bayer's IC counterclaims fail and should be dismissed.[3]

### A. Bayer Fails to Plead Inequitable Conduct with the Requisite Particularity Under Rule 9(b)

#### 1. Bayer Fails to Plead the "Who" and "When" with Particularity for the Allegedly Concealed Information

Bayer's allegations concerning information purportedly concealed from the PTO do not meet the Federal Circuit's *Exergen* requirements. Bayer alleges, with respect to claim 1 of the Bossard '223 Patent and claim 1 of the Bentley '440 Patent, that four and seven pieces of material information, respectively, were concealed from the PTO (the "concealment theories"). (Bossard CC ¶¶ 74-78; Bentley CC ¶¶ 77-87.) But Bayer fails to plead the "who" and "when" as to each of its concealment theories. *See Exergen*, 575 F.3d at 1327. Each deficiency independently warrants dismissal. *Senju*, 921 F. Supp. 2d at 307.

First, Bayer fails to identify specifically "who" is accused of concealing what information. Bayer generally alleges that "the Applicants" concealed information. (Bossard CC ¶¶ 74-78; Bentley CC ¶¶ 77-87.) But a vague reference to a group of people—without naming "the specific individual . . . who both knew of the material information and deliberately withheld or misrepresented it"—is insufficient because it "fails to identify the 'who.'" *Exergen*, 575 F.3d at 1329. Similarly, this Court has found the "who" insufficiently pled where allegations—like Bayer's—generally referenced "the Applicants." *Alza*, 2014 U.S. Dist. LEXIS 71635, at *4.

---

[3] If the Court finds that any one of Bayer's 19 IC theories are sufficiently pled, it should nevertheless dismiss the remaining insufficiently pled IC theories. *IBM Corp. v. Priceline Grp., Inc.*, No. 15-137, 2017 WL 1349175, at *6-8 (D. Del. Apr. 10, 2017) (Burke, M.J.) (addressing each disparate IC theory, despite the fact that they were all lumped together).

Bayer's generalized pleading in subsequent Counts that the '223/'440 Patents are unenforceable on the basis of IC "on the part of one or more of" Drs. Harris, Bentley, Charles, and Bossard, and Ms. Zhang, and prosecution counsel Mr. Wilson and Ms. Evans also fails. (Bossard CC ¶¶ 173, 178, 183, 188, 193, 198, 203, 208; Bentley CC ¶¶ 183, 189, 195, 201, 207.) Courts have held that such generalized allegations fail to sufficiently plead the "who" requirement. As this Court explained in *Alza*, "Defendants *need to identify by name the individuals who did things* constituting affirmative misconduct or contrary to the duty of candor . . . ." 2014 U.S. Dist. LEXIS 71635, at *5 (emphasis added). Further, in *XpertUniverse, Inc. v. Cisco Systems, Inc.*, this Court held that a pleading that "at least [an inventor] or one or more of the other individuals listed as an inventor" failed to adequately allege the "who." 868 F. Supp. 2d 376, 381 (D. Del. 2012). And in *Emerson Electric Co. v. Suzhou Cleva Electric Appliance Co.*, the court held that a similar "'and/or' style of pleading" fails to meet Rule 9(b)'s pleading requirements because it does not specifically "allege that any one of those individuals necessarily committed the particular act . . . and [is] thus insufficient to identify the person or persons who committed the acts." No. 13-1043, 2014 WL 3600380, at *3 (E.D. Mo. July 22, 2014). Reliance on "and/or" allegations signifies that the theory is "uncertain" and, therefore, cannot meet the particularity requirements for pleading "who" was guilty of IC. *Drew Techs., Inc. v. Robert Bosch, L.L.C.*, No. 12-15622, 2014 WL 562458, at *3 (E.D. Mich. Feb. 13, 2014). Bayer's generalized allegations do not identify by name specifically who did what and therefore fail to satisfy Rule 9(b).

Second, Bayer fails to plead "when" the allegedly concealed information should have been disclosed. Courts in this District have held that *Exergen's* "when" standard requires pleading dates on which submissions to the PTO should have identified allegedly concealed

9

information.  For example, in *Alza*, this Court held that "Defendants need to identify by name the individuals who did things constituting affirmative misconduct or contrary to the duty of candor, *on particular dates*."  2014 U.S. Dist. LEXIS 71635, at *5 (emphasis added).  But Bayer's pleadings are glaringly silent as to what particular date(s), i.e., "when," any allegedly concealed information should have been disclosed to the PTO.  (*E.g.*, Bossard CC ¶¶ 74-78; Bentley CC ¶¶ 77-87.)

By failing to plead the "who" and "when" of its concealment theories with particularity, Bayer fails to properly state a claim.  *See Senju*, 921 F. Supp. 2d at 307 (failure to plead even one of the five with particularity is fatal under Rule 9(b)); *see Exergen*, 575 F.3d at 1330 (same). Each of Bayer's inadequately pled concealment theories should therefore be dismissed.

### 2.    Bayer Fails to Plead the "Who," "How," and "What" with Particularity for the Allegedly False Statements

Bayer's allegations concerning purportedly false statements to the PTO do not meet the Federal Circuit's *Exergen* requirements.  Bayer alleges, with respect to claim 1 of the Bossard '223 Patent and claim 1 of the Bentley '440 Patent, that six and two different false statements were made, respectively (the "misstatement theories").  (Bossard CC ¶¶ 80-86; Bentley CC ¶¶ 91-94.)  For its misstatement theories, Bayer fails to plead the "who," "how," and "what; each deficiency independently necessitates dismissal.  *See Exergen*, 575 F.3d at 1327, 1330.

First, Bayer fails to plead the "who" for its alleged misstatements to the PTO.  As with its concealment theories, Bayer's allegations concerning the misstatement theories generally state that: "*The Applicants* also made statements to the PTO in prosecuting" the '223/'440 Patents that were false and that the '223/'440 Patents are unenforceable on the basis of IC "*on the part of one or more* of" a group of people.  (*See, e.g.*, Bossard CC ¶¶ 80-86, 173, 178, 183, 188, 193, 198, 203, 208; Bentley CC ¶¶ 91-94, 183, 189, 195, 201, 207) (emphasis added).  Thus, Bayer's

10

misstatement theories suffer from the same fatal deficiency as its concealment theories: generalized "who" pleadings that do not satisfy *Exergen*. *See XpertUniverse*, 868 F. Supp. 2d at 381; *Emerson Elec. Co.*, 2014 WL 3600380, at *3-4.

Second, Bayer fails to sufficiently plead the "how" for its misstatement theories. Pleading "how" requires allegations as to how a reasonable examiner would have used the allegedly false statements in assessing patentability. *Exergen*, 575 F.3d at 1330. In other words, a pleading must identify the basis on which the PTO would have rejected the patent. *Invista N. Am. S.À.R.L. v. M&G USA Corp.*, No. 11-1007, 2013 U.S. Dist. LEXIS 77685, at *31-32 (D. Del. May 3, 2013) (Burke, M.J.), *report and recommendation adopted by* 2013 U.S. Dist. LEXIS 76205 (D. Del. May 30, 2013) (Robinson, J.). For example, it may be sufficient to plead "facts indicating that the PTO was particularly concerned with a representation, or that the truth, if presented to the PTO, would have rendered the invention unpatentable." *See id*. But Bayer's allegations do not identify any basis whatsoever on which any of the misstatement theories would have lead the PTO to reject the '223/'440 Patents. Bayer pleads no facts as to whether the PTO was particularly concerned with any issue regarding any of the alleged misstatement theories. Bayer's allegations fail to plead anything concerning "how" a reasonable examiner would have used any of the misstatement theories to assess patentability of any of the claims of the '223/'440 Patents.

Third, Bayer fails to plead the "what" for its misstatement theories. *Exergen* explains that adequately pleading the "what" requires "identify[ing] which claims, and which limitations in those claims" the allegedly false statements relate to. 575 F.3d at 1329. Bayer fails to do this. Indeed, for some of its misstatement theories, Bayer is silent as to *any* relevant claims or claim limitations. (*See, e.g.*, Bossard CC ¶¶ 83-86; Bentley CC ¶ 93.) For others, Bayer generally

11

pleads that they "impact all the Asserted Claims" without any specificity, particularly claim limitations.  (*See, e.g.*, Bossard CC ¶¶ 81, 82; Bentley CC ¶ 92.)

By failing to plead the "who," "how," and "what" of its misstatement theories with particularity, Bayer fails to state a claim.  *See Senju*, 921 F. Supp. 2d at 307 (failure to plead even one of the five with particularity is fatal under Rule 9(b)); *see Exergen*, 575 F.3d at 1330 (same).  Each of Bayer's inadequately pled misstatement theories should therefore be dismissed.

### 3.     Bayer Fails to Plead Sufficient Facts to Support Intent to Deceive

Bayer's allegations fail to raise a reasonable inference of intent.  To properly plead intent, one "must include sufficient allegations of underlying facts from which a court may reasonably infer that a specific individual (1) knew of the withheld material information or of the falsity of the material misrepresentation, and (2) withheld or misrepresented this information with the specific intent to deceive the PTO."  *Exergen*, 575 F.3d at 1328-29.  Bayer fails to plead either, lacking "specific factual allegations" from which the Court could reasonably infer that a specific individual had knowledge of the material information and had a specific intent to deceive.  *Id.* at 1331.  Bayer's IC counterclaims should be dismissed for these reasons alone.

### a.     Bayer Fails to Plead Facts Sufficient to Show that Any Specific Individual Had Knowledge of Materiality

Bayer's allegations of a purported "intent to deceive" fail to identify specifically who was aware of the specific information that Bayer alleges was material in prosecuting claim 1 of the '223/'440 Patents.  In *Exergen*, the Federal Circuit rejected a proposed pleading because it "provide[d] no factual basis to infer that any specific individual, who owed a duty of disclosure in prosecuting the . . . patent, knew of the specific information . . . that is alleged to be material to the claims of the . . . patent."  *Id.* at 1330.  Bayer's failure here stems from Bayer's failure to sufficiently plead "who" committed any alleged act of IC, *supra*.  *See Invista*, 2013 U.S. Dist.

LEXIS 77685, at *35. Bayer's pleadings about the "Applicants" collectively (Bossard CC ¶¶ 74-87; Bentley CC ¶¶ 77-94) fail to identify a specific individual who had specific knowledge of the allegedly material information and thus, in turn, fail to identify an individual with a specific intent to deceive. *Invista*, 2013 U.S. Dist. LEXIS 77685, at *35.

Bayer's reliance on generalized, unsupported assertions that individuals knew or may have known about the allegedly withheld information or false statements—without more—does not satisfy its pleading obligations. (*See, e.g.*, Bossard CC ¶¶ 97, 99, 102-104, 107-109, 117-18; Bentley CC ¶¶ 102-104, 109-113, 116-122, 124-129, 131.) The Federal Circuit has cautioned that "one cannot assume that an individual, who generally knew that a reference existed, also knew of the specific material information contained in that reference." *Exergen*, 575 F.3d at 1330. Here, Bayer fails to plead that any specific individual had knowledge of specific alleged material information, and thus cannot satisfactorily plead intent to deceive. Such deficiency renders Bayer's pleadings fatally defective and warrants dismissal.

### b.    Bayer Fails to Plead Facts Sufficient to Infer a Specific Intent to Deceive the PTO

Bayer does not plead factual allegations that would support a reasonable inference that any specific individual made a deliberate decision to withhold or falsify any of the allegedly material information with an intent to deceive the PTO. That an applicant knew of information, should have known of its materiality, and decided not to submit it to the PTO does not prove specific intent to deceive. *See Therasense*, 649 F.3d at 1290. At most, Bayer alleges that certain individuals might have had an incentive to conceal or falsify information—but Bayer notably fails to allege that said alleged acts were done with an intent to deceive. (Bossard CC ¶¶ 122-50; Bentley CC ¶¶ 134-60.) Indeed, the Federal Circuit has reversed findings of IC where the presence of an incentive to conceal was equated with an intent to deceive. *See, e.g., Metoprolol*

13

*Succinate Patent Litig. v. KV Pharm. Co.*, 494 F.3d 1011, 1021 (Fed. Cir. 2007). Bayer's

pleadings are insufficient to support a reasonable inference of an intent to deceive.

> **B.    Bayer Fails to Plead Inequitable Conduct Concerning the Other Bossard/Bentley Patents with Requisite Particularity Under Rule 9(b)**

Bayer's conclusory IC allegations regarding the other Bossard/Bentley Patents (beyond

the Bossard '223 Patent and Bentley '440 Patent) do not meet the heightened pleading

requirements of Rule 9(b). These allegations lack the requisite particularity, failing to identify

"the specific who, what, when, where, and how" of the IC theories. *Exergen*, 575 F.3d at 1328-

29. Moreover, the pleadings lack sufficient allegations of underlying facts from which a court

may reasonably infer that a specific individual (1) knew of the withheld material information or

falsity of the material misrepresentation, and (2) withheld or misrepresented this information

with a specific intent to deceive the PTO. *Id.* Bayer's IC counterclaims concerning the other

Bossard/Bentley Patents should therefore be dismissed.

Further, Bayer fails to sufficiently plead infectious unenforceability of the other

Bossard/Bentley Patents. First, related patents cannot be held unenforceable without at least one

patent by itself being held unenforceable. *Speedplay, Inc. v. Bebop, Inc.*, 211 F.3d 1245, 1259

(Fed. Cir. 2000). As explained above, Bayer has not sufficiently pled IC against the Bossard

'223 or the Bentley '440 Patents.

Second, Bayer does not plead facts sufficient to establish that the doctrine of infectious

unenforceability applies. For infectious unenforceability, Bayer must plead an "immediate and

necessary relation" between the alleged IC and enforcement of the related patents to sufficiently

plead IC of a related patent. *See IBM*, 2017 WL 1349175, at *20. An "immediate and necessary

relation" requires that "the inequitable conduct that occurred earlier in the chain [of issued

patents] must be related to the targeted claims of the ultimately-issued patent or patents sought to

14

be enforced." *Id.* That patents simply share a parent application does not establish infectious unenforceability; instead, more than a mere relationship between the patents must be alleged. *Id.* Indeed, courts have held a pleading of: (1) related specifications, including sharing some figures; (2) claims having substantively the same limitations; and (3) all the patents being asserted against the same products, to be insufficient to establish an "immediate and necessary relation." *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, No. 08-309, 2009 WL 4928024, at *9 (D. Del. Dec. 18, 2009) (Stark, M.J.).

For the other Bossard Patents, Bayer fails to plead infectious unenforceability, including an immediate and necessary relation with the '223 Patent; Bayer merely asserts that the other Bossard Patents are generally directed to the same subject matter and are part of the same patent family. (Bossard CC ¶ 87.) This is insufficient. *Power Integrations*, 2009 WL 4928024, at *9. Indeed, Bayer fails to address that the other Bossard Patents differ substantially in claim scope. For example, claims of the '657 Patent recite limitations not found in claim 1 of the '223 Patent, such as claim limitations directed to: (1) "monoPEGylated"; (2) PEG "attached to a cysteine residue of a B-domain deleted Factor VIII polypeptide"; (3) "wherein the cysteine is added or substituted"; and (4) "located within the [A1, A2 or A3] subunit." (*See* D.I. 281, Ex. Q, claims 6-9.) Bayer's failure to sufficiently plead infectious unenforceability for the other Bossard Patents warrants dismissal of the associated IC claims.

Likewise, for the other Bentley Patents, Bayer fails to plead infectious unenforceability, including an immediate and necessary relation with the '440 Patent; Bayer merely asserts that the other Bentley Patents are generally directed to the same subject matter and are part of the same patent family. (Bentley CC ¶¶ 90, 94.) This is insufficient as well. *Power Integrations*, 2009 WL 4928024, at *9. Moreover, the other Bentley Patents were separated from the '440 Patent by

15

a divisional application. "A divisional application is drawn to a different invention, and different inventions do not share an 'immediate and necessary' relation to each other." *Robocast, Inc. v. Apple Inc.*, 39 F. Supp. 3d 552, 571 (D. Del. 2014). Bayer fails to address this difference, or any of the unique claim limitations in the other Bentley Patents. For example, the '072 Patent recites a 60 kDa limitation (s*ee* C.A. 18-1355 D.I. 1, Ex. B, claim 6) not found in claim 1 of the '440 Patent. Bayer's failure to sufficiently plead infectious unenforceability for the other Bentley Patents requires dismissing the IC claims for those patents.

### C.      Bayer Fails to Adequately Plead that Drs. Harris and Charles Owed a Duty of Candor to the PTO

Bayer's IC counterclaims concerning former Nektar employees Drs. Harris and Charles should be dismissed because neither owed a duty of candor regarding the Bossard/Bentley Patents.[4] Determining whether an individual involved in the alleged misconduct owes a duty of candor to the PTO is a "threshold inquiry" in an IC analysis. *Avid Identification Sys., Inc. v. Crystal Imp. Corp.*, 603 F.3d 967, 976 (Fed. Cir. 2010). The duty of candor applies to "[i]ndividuals associated with the filing or prosecution of a patent application" as: (1) each named inventor in the application; (2) each attorney or agent who prepares or prosecutes the application; and (3) "every other person who is *substantively* involved in the preparation or prosecution of the application." 37 C.F.R. § 1.56(c) (emphasis added). An individual is "substantively" involved when the involvement "relates to the content of the application or decisions related thereto" and is not "wholly administrative or secretarial in nature." *Avid*, 603 F.3d at 974.

---

[4] Further, even if Drs. Harris and Charles owed a duty of candor (they did not), none of the alleged acts or omissions identified by Bayer substantively support a finding of IC.

Neither Drs. Harris nor Charles were inventors, nor were they prosecuting attorneys or agents for the Bossard/Bentley Patents. Thus, they would have had a duty of candor to the PTO only if they were substantively involved in preparation or prosecution of those patents. *Id.* But Bayer fails to plead any facts demonstrating that either were "substantively" involved, and thus owed a duty of disclosure for the Bossard/Bentley Patents.

For Dr. Harris, Bayer does not plead any substantive involvement in the preparation or prosecution of the Bossard/Bentley Patents. Bayer merely asserts that he was "involved" in prosecution because he allegedly supervised the named inventors and knew of the applications given their alleged "importance" to Nektar. (Bossard CC ¶ 91; Bentley CC ¶ 98.) For the Bentley Patents, Bayer also alleges that Dr. Harris received communications from prosecution counsel. (Bentley CC ¶ 98.) But Bayer's allegations fail to demonstrate that Dr. Harris' alleged involvement was "substantive" and not "wholly administrative or secretarial in nature." *Avid*, 603 F.3d at 974. Bayer fails to plead that Dr. Harris's involvement was "relate[d] to the content of the application[s] or decisions related thereto." *Id.*

For Dr. Charles—who Bayer only alleges concerning the Bossard Patents but not the Bentley Patents—Bayer has no allegations concerning his involvement, much less substantive involvement, in preparing or prosecuting the Bossard Patents.

Bayer's IC claims involving Drs. Harris and Charles should therefore be dismissed.

## VII.    BAYER FAILS TO STATE A *WALKER PROCESS* ANTITRUST CLAIM

Bayer's counterclaims lack a separate count asserting a *Walker Process* antitrust violation. Nowhere in either of its two amended answers does Bayer articulate this claim, leaving Plaintiffs and the Court to fish for factual allegations that may support such a claim. *See Murphy v. Office of Disciplinary Counsel*, No. 17-1239, 2019 WL 4752059, at *8 n.13 (E.D. Pa. Sept. 30, 2019) ("No court should have to engage in this type of search for facts and claims in

17

documents submitted by licensed counsel" where plaintiff failed to "organize his causes of action into counts or tie in his factual allegations to any particular cause of action."). Within the Background section, under a title "*Walker Process* Antitrust Violations," Bayer makes antitrust allegations within just four paragraphs (Bossard CC ¶¶ 158-61; Bentley CC ¶¶ 168-71) that are conclusory and inadequate.

Assertion of a patent is ordinarily immune from liability under the antitrust laws. *Walker Process Equip., Inc. v. Food Mach. & Chem. Corp.*, 382 U.S. 172, 177-78 (1965). *Walker Process* created a "narrow" exception to that rule—the enforcement of a patent procured by fraud may form the basis for a cause of action under Section 2 of the Sherman Act. To state a Sherman Act claim for attempted monopolization pursuant to *Walker Process*, a claimant must first plead two patent fraud elements: (1) the patent was procured by knowing and willful fraud on the PTO; and (2) the asserting party engaged in such fraud or was aware of the fraud when it initiated the lawsuit. *Id.* at 177. Failure to plead these elements renders the asserting party immune from antitrust liability. *Id.* Moreover, the claimant must also plead the elements of attempted monopolization: (1) the asserting party has engaged in predatory or exclusionary conduct; (2) with a specific intent to achieve monopoly power; and (3) there is a dangerous probability that the asserting party will obtain monopoly power in a properly defined relevant product market. *Spectrum Sports v. McQuillan*, 506 U.S. 447, 456 (1993). Finally, the claimant must plead that it suffered an antitrust injury. *See Sprint Commc'ns Co., L.P. v. Charter Commc'ns, Inc.*, No. 17-1734, 2019 WL 1082067, at *5 (D. Del. Mar. 7, 2019).

As to patent fraud, as discussed above, Bayer fails to sufficiently plead fraud on the PTO, which itself is fatal to its *Walker Process* antitrust claim. Moreover, Bayer does not even purport

18

to allege that Baxalta specifically engaged in or otherwise knew of the alleged fraud, which acts as a complete bar to a *Walker Process* claim against Baxalta.

As to the Sherman Act, Bayer wholly fails to plead an attempted monopolization claim. Because Bayer does not adequately plead fraud on the PTO, it has not pled either the necessary anticompetitive conduct or the presence of specific intent. Bayer also does not plead a dangerous probability that either Baxalta or Nektar will achieve monopoly power because it fails to adequately plead a relevant product market. Instead, it generally refers to multiple "markets" for extended half-life ("EHL") products and all plasma products, failing to plead any facts to define a relevant product market. Bayer also fails to plead that either Baxalta or Nektar has a sufficient market presence, or any other facts that would support a dangerous probability of achieving monopoly power. In particular, Bayer fails to plead how Nektar can engage in attempted monopolization when Nektar has no market presence for hemophilia A products whatsoever— regardless of how a "market" may be defined. Finally, Bayer fails to adequately allege an antitrust injury that it has suffered or will suffer as a result of attempted monopolization. For any of these reasons, Bayer's *Walker Process* antitrust counterclaim must be dismissed.

 **A.  Bayer Fails to State a *Walker Process* Fraud Claim**

  **1.  Bayer Fails to Adequately Plead Fraud on the PTO**

Bayer cannot state a *Walker Process* antitrust claim because it has not adequately alleged knowing and willful fraud on the PTO. "A patent . . . is an exception to the general rule against monopolies." *Walker Process*, 382 U.S. at 177.[5] There is, however, a "narrow" exception to this rule, *Nobelpharma AB v. Implant Innovations, Inc.*, 141 F.3d 1059, 1068 (Fed. Cir. 1998), which requires Bayer to first demonstrate that the asserted patents were obtained via fraud on the

---

[5] The institution of a patent-infringement litigation generally cannot violate the antitrust laws. *See Prof'l Real Estate Inv'rs, Inc. v. Columbia Pictures Indus.*, 508 U.S. 49, 56 (1993); *see also In re Wellbutrin XL Antitrust Litig.*, 868 F.3d 132, 147-48 (3d Cir. 2017).

19

PTO. *See Walker Process*, 382 U.S. at 176-78; *see also In re Wellbutrin XL Antitrust Litig.,* 868 F.3d 132, 147 (3d Cir. 2017) ("A plaintiff claiming that a lawsuit is, by its very existence, anticompetitive and unlawful faces an uphill battle."). Bayer must thus plead—meeting Rule 9(b)'s heightened standard—that Plaintiffs "obtained the patent by knowing and willful fraud on the patent office and maintained and enforced the patent with knowledge of the fraudulent procurement[.]" *Sprint*, 2019 WL 1082067, at *5 (citing *TransWeb, LLC v. 3M Innovative Props. Co.*, 812 F.3d 1295, 1306 (Fed. Cir. 2016)). It has not. Bayer's allegations of fraud on the PTO depend on its IC allegations. (Bossard CC ¶¶ 156-158; Bentley CC ¶¶ 166-168). But, as explained *supra* Section VI, Bayer fails to sufficiently plead IC for the Bossard '223 Patent and Bentley '440 Patent and, in particular the other Bossard/Bentley Patents. Therefore, Bayer does not plead *Walker Process* fraud. *See Pac. Biosciences of Cal., Inc. v. Oxford Nonopore Techs., Inc.*, No. 17-1353, 2019 WL 668843, at *3 (D. Del. Feb. 19, 2019) (Stark, J.) (dismissing *Walker Process* claims that rested on inadequately pled IC allegations).

### 2.    Bayer Fails to Plead Knowledge by Baxalta

Bayer makes no *Walker Process* allegations specifically to Baxalta—a separate entity from plaintiff Nektar and licensee of the patents-in-suit. When a *Walker Process* claim is asserted against an entity that did not itself engage in the alleged fraud, "knowledge of the patent's infirmity" is an essential element. *Walker Process*, 382 U.S. at 177 n.5; *see Tyco Healthcare Grp. LP v. Mut. Pharm. Co.*, 762 F.3d 1338, 1349-50 (Fed. Cir. 2014) (affirming summary judgment dismissal of *Walker Process* claim because there was no evidence that Tyco had knowledge of any alleged fraud); *Catch Curve, Inc. v. Integrated Glob. Concepts, Inc.*, No. 06-2199, 2011 WL 13146740, at *4 (N.D. Ga. Sept. 1, 2011) (dismissing *Walker Process* counterclaim that failed to plead that the assignees were involved in the procurement of the patents or knew that the patents had been procured by fraud on the PTO).

20

Bayer does not specifically allege that Baxalta engaged in any fraudulent conduct, nor does it allege that Baxalta was aware of the alleged fraud when it initiated this lawsuit. Indeed, Bayer's allegations are devoid of any mention of Baxalta as related to the alleged fraud. Having pled no facts as to what, when, or how Baxalta had knowledge of any details of any alleged fraudulent conduct, Bayer's *Walker Process* allegations against Baxalta must be dismissed.

### B.       Bayer Fails to Allege Attempted Monopolization

Even if the Court were to accept Bayer's fraud on the PTO pleadings as sufficient, Bayer's attempted monopolization allegations, nonetheless, remain deficient. To state a claim for attempted monopolization under Section 2 of the Sherman Act, a claimant must allege facts which, if true, show that the alleged monopolist: (1) engaged in exclusionary or predatory conduct; (2) with the specific intent to monopolize the relevant geographic and product market; and (3) possessed sufficient market power to come dangerously close to success. 15 U.S.C. § 2; *Barr Labs., Inc. v. Abbott Labs.*, 978 F.2d 98, 112 (3d Cir. 1992). Further, for claimants seeking to invoke *Walker Process*, fraud on the PTO is a gating issue; only by *first* adequately pleading fraud on the PTO (and for Baxalta, knowledge of such alleged fraud), can the Court entertain any antitrust claims. *Walker Process*, 382 U.S. at 176-78. By failing to plead *Walker Process* fraud, Bayer has also failed to plead (1) anticompetitive conduct and (2) specific intent. Bayer furthers fails to plead (3) a dangerous probability of achieving monopoly power in the relevant market.

### 1.       Bayer Fails to Allege a Dangerous Probability of Achieving Monopoly Power in the Relevant Product Market

Without defining a relevant product market, Bayer cannot allege that Baxalta or Nektar had a sufficient presence in that market to have a dangerous probability of monopolization.

> To establish . . . attempt to monopolize a part of trade or commerce under § 2 of the Sherman Act, it would [] be necessary to appraise the exclusionary power of the illegal patent claim in terms of the relevant market for the product involved.

> *Without a definition of that market there is no way to measure [Defendant's] ability to lessen or destroy competition.*

*Id.* at 177 (emphasis added). Section 2 of the Sherman Act prohibits exclusionary and predatory conduct only by monopolists or would-be monopolists—it does not reach all exclusionary and predatory conduct. *Spectrum Sports*, 506 U.S. at 458-59. Thus, to establish a claim, Bayer must demonstrate a dangerous probability of Plaintiffs obtaining a monopoly in a defined relevant market.

### a.    Bayer Fails to Adequately Define a Relevant Product Market

To survive a motion to dismiss, Bayer is required to plead and define a relevant market. *Id.* at 455. "The relevant 'product market' is comprised of 'commodities reasonably interchangeable by consumers for the same purposes.'" *Novak v. Somerset Hosp.*, 625 F. App'x 65, 67 (3d Cir. 2015). Bayer has no such pleadings. "Where the plaintiff fails to define its proposed relevant market with reference to the rule of reasonable interchangeability and cross-elasticity of demand, or alleges a proposed relevant market that clearly does not encompass all interchangeable substitute products . . . the relevant market is legally insufficient and a motion to dismiss may be granted." *Queen City Pizza v. Domino's Pizza*, 124 F.3d 430, 436 (3d Cir. 1997); *see also Sun Microsystems, Inc. v. Versata Enters. Inc.*, 630 F. Supp. 2d 395, 403-04 (D. Del. 2009) (dismissing a complaint for failure to adequately plead relevant product market); *Ragner Tech. Corp. v. Berardi*, 324 F. Supp. 3d 491, 509 (D.N.J. 2018) (same).

Bayer's pleadings are devoid of the necessary allegations that would enable the Court and Plaintiffs to determine both the contours and reach of the relevant product market. Bayer does not even allege the relevant product market or what comprises it. Rather, Bayer refers to multiple markets. In one place, Bayer refers to "the market for [EHL] products and products with comparable or even less frequent dosing" (Bossard CC ¶ 159; Bentley CC ¶ 169), while

22

elsewhere Bayer refers to "the plasma product market." (Bossard CC ¶¶ 160, 169; Bentley CC ¶¶ 170, 178). Bayer alleges no facts concerning the nature of plasma or EHL competition, or which products do and do not compete with PEGylated Factor VIII products. (Bossard CC ¶160; Bentley CC ¶ 170.) These inconsistencies and omissions are fatal. Bayer's pleadings are "plainly deficient" because the "relevant market allegations are conflicting and variable." *See Teva Pharm. Indus., Ltd. v. Apotex, Inc.*, No. 07-5514, 2008 WL 3413862, at *8 (D.N.J. Aug. 7, 2008). By failing to plead facts to define a relevant product market, and by further failing to allege what the relevant product market even is, Bayer cannot adequately allege a claim for attempted monopolization under Section 2 of the Sherman Act.[6]

### b.    Bayer Fails to Adequately Plead Dangerous Probability of Monopolization

By failing to plead a relevant product market, Bayer has also failed to plead Plaintiffs' dangerous probability of monopolizing that market. "In order to determine whether there is a dangerous probability of monopolization, a court must inquire into the relevant product and geographic market and the defendant's economic power in that market." *Queen City Pizza*, 124 F.3d at 442. A dangerous probability demands more than "[a]lleging market share alone . . . . Monopolization or threatened monopolization requires something more, which may include 'the strength of competition, probable development of the industry, the barriers to entry, the nature of the anti-competitive conduct, and the elasticity of consumer demand.'" *Crossroads Cogeneration Corp. v. Orange & Rockland Utils. Inc.*, 159 F.3d 129, 141 (3d Cir. 1998) (quoting *Barr Labs.*, 978 F.2d at 112).

---

[6] Because Bayer's prayer for relief seeks to enjoin Plaintiffs from enforcing their patents "within the relevant product market," Bayer's failure to plead a relevant product market also renders such relief impossible.

23

Here, Bayer's pleadings lack any facts that could support the assertion that Baxalta or Nektar have a sufficient market presence to pose a dangerous probability of achieving a monopoly in a relevant market.  Instead, Bayer's pleadings allege, without supporting facts, that Plaintiffs' enforcement of the patents-in-suit creates a dangerous probability that they will monopolize plasma or EHL products.  (Bossard CC ¶¶ 160, 169; Bentley CC ¶¶ 170, 178.)

Bayer's failure to plead facts about the market and competition renders it impossible to properly allege a dangerous probability of monopolization.  For example, there are no allegations with respect to Baxalta's, Nektar's, or Bayer's share of any relevant product market, competitive constraints that Plaintiffs currently face and will face going forward in that market, barriers to entry and entry prospects, or the likely impact on the market, including customer demand, should Plaintiffs prevail.  (*See* Bossard CC ¶¶ 158-61; Bentley CC ¶¶ 168-71.)  What is not plausible, indeed, is that through the mere enforcement of their patent rights against Bayer, Baxalta, or Nektar can gain a monopoly over any relevant market.  Bayer's pleadings are inadequate.

### c. Enforcing Patents Does Not Constitute Attempted Monopolization

Bayer improperly alleges a dangerous probability of monopolization as to a single product, not a relevant market.  Bayer's theory of monopolization boils down to this: by seeking to enforce patents, Plaintiffs are excluding products that contain their patented technology. (Bossard CC ¶ 160; Bentley CC ¶ 170.)  But "[a] patent is not a competitive market and does not define a competitive market." *Minebea Co. v. Papst*, 444 F. Supp. 2d 68, 217 (D.D.C. 2006). The right to exclude unlawful products is the purview—indeed the purpose—of the patent laws. 35 U.S.C. § 154(a)(1).

Exercising patent rights cannot constitute market power under the antitrust laws. *Ill. Tool Works Inc. v. Indep. Ink, Inc.*, 547 U.S. 28, 45-56 (2006) ("Congress . . . reached the conclusion

24

that a patent does not necessarily confer market power upon the patentee . . . we reach the same conclusion."); *see also In re Indep. Serv. Orgs. Antitrust Litig.*, 203 F.3d 1322, 1325 (Fed. Cir. 2000) ("A patent alone does not demonstrate market power."); *C.R. Bard, Inc. v. M3 Sys. Inc.*, 157 F.3d 1340, 1368 (Fed. Cir. 1998) ("It is not presumed that the patent-based right to exclude necessarily establishes market power in antitrust terms."); *Abbott Labs. v. Brennan*, 952 F.2d 1346, 1354 (Fed. Cir. 1991) (same) (citing *Walker Process*, 382 U.S. at 177-78)).

Bayer does not plead how Baxalta or Nektar, even if they controlled PEGylated Factor VIII products, could monopolize a relevant product market that Bayer admits is much broader, e.g., EHL products or plasma products. (*See* Bossard CC¶¶ 159-160, 169; Bentley CC ¶¶ 169-170, 178.) No allegations bridge the gap from controlling PEGylated factor VIII products to controlling an entire market. That is the crux of attempted monopolization; it is missing.

### d. Bayer's Pleading Exhibits Demonstrate No Dangerous Probability of Monopolization



███████████████████████████████████████

████████████████████████████  *See generally Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988 (9th Cir. 2018) (discussing incorporation-by-reference doctrine).  Bayer has failed to plead facts that may support a dangerous probability that Plaintiffs will achieve a monopoly, and its Sherman Act claim must be dismissed.

### 2.    Bayer Fails to Allege that Nektar Is a Market Participant

Bayer fails to allege Nektar, the PEG component supplier, is a market participant. Monopolization is not a joint offense; such allegations must be stated with respect to each party accused of monopolization.  *ID Sec. Sys. Can., Inc. v. Checkpoint Sys., Inc.*, 249 F. Supp. 2d 622, 649-50 (E.D. Pa. 2003) (noting that Section 2 applies to the conduct of single firms only).  And "[a]s a matter of law, a party cannot monopolize or attempt to monopolize a market in which it is not a supplier."  *Compliance Mktg. v. Drugtest, Inc.*, No. 09-1241, 2010 WL 1416823, at *14 (D. Colo. Apr. 7, 2010); *Discon, Inc. v. NYNEX Corp.*, 93 F.3d 1055, 1062 (2d Cir. 1996) ("[I]t is axiomatic that a firm cannot monopolize a market in which it does not compete."), *vacated on other grounds by NYNEX Corp. v. Discon, Inc.*, 525 U.S. 128 (1998).  Such is clear because "[w]ithout any share in the relevant market *as described by plaintiffs*, there can be no inference that defendants hold sufficient economic power in that market to create a dangerous probability of monopoly."  *Pastore v. Bell Tel. Co. of Pa.*, 24 F.3d 508, 513 (3d Cir. 1994) (emphasis in original); *see also Genetic Sys. Corp. v. Abbott Labs.*, 691 F. Supp. 407, 421 (D.D.C. 1988) (dismissing Section 2 claims because plaintiff was "[u]nable to allege or show that [defendant] had a specific intent to monopolize a market in which it does not participate").

Nektar is not alleged to be a participant in any relevant product market.  Nektar does not make nor sell a product to treat hemophilia A, nor does it set prices.  (Bossard CC ¶ 70; Bentley CC ¶ 73.)  Thus, Nektar cannot have any market power in any proposed relevant market as

shared with Bayer, who manufactures and markets hemophilia products (*see* Bossard CC ¶ 10).

*See, e.g.*, *Minebea*, 444 F. Supp. 2d at 216-17 ("Papst *cannot* have market power in the market for hard disk drives or the market for motors because Papst does not make or sell either hard disk drives or motors; it simply licenses patents. . . . Because Papst does not make and sell motors or hard disk drives, it does not compete with Minebea or its customers (the HDD manufacturers) in any market and has no market power in either the motor or hard disk drive product markets.").[7]

Bayer's allegations demonstrate that its deficient attempted monopolization claim pertains to Baxalta, not Nektar. ███████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████████████████ further evidencing Bayer's failure to plead that Nektar is a participant in any relevant market over which Bayer purports to allege attempted monopolization. Bayer's pleadings are devoid of any mention of how exactly a licensor may exert control over the market exclusivity through its licensee.

### 3.    Bayer Fails to Adequately Plead a Claim for Antitrust Injury

Section 4 of the Clayton Act provides for the potential recovery of enhanced damages sustained by "any person who shall be injured . . . by reason of anything forbidden in the antitrust laws." 15 U.S.C. § 15(a). Such recovery is "only for *antitrust injury*." *Sprint*, 2019 WL 1082067, at *5 (emphasis in original) (quoting *TransWeb*, 812 F.3d at 1309). In *Sprint*, this Court explained that "[l]itigation expenses are not injury *per se*," but that "an antitrust injury exists only when competition would impacted by a verdict for the plaintiff." *Id.* at *14-15 (citing

---

[7] This is an e uitable result, as the reverse would also be true: ██████████████████████
██████████████████████████████████████ *See, e.g.*, *Acme Mkts. v. Wharton Hardware & Supply Corp.*, 890 F. Supp. 1230, 1237 (D.N.J. 1995) ("Wharton is not a participant in the relevant market, and does not . . . sustain antitrust injury from the alleged violation.").

*TransWeb*, 812 F.3d at 1310). As the Sprint defendants had not plausibly alleged that a reduction of competition would result if the plaintiff was successful, this Court held that there could be no antitrust injury. *Id.* at \*15-16.

Here, Bayer's allegations, even if taken as true, do not divulge a plausible theory as to how Plaintiffs could achieve a monopoly or impact competition in the relevant market. Thus, Bayer does not allege a reduction of competition, and fails to plausibly allege that they have suffered an antitrust injury. *See Bocobo v. Radiology Consultants of S. Jersey, P.A.*, 305 F. Supp. 2d 422, 425 (D.N.J. 2004) ("To determine if Plaintiff has suffered an antitrust injury, the Court must determine if competition in the relevant market has been impermissibly affected."); *see also Siegler v. Sorrento Therapeutics, Inc.*, No. 18-1681, 2019 WL 581719, at \*12-13 (S.D. Cal. Feb. 13, 2019) (finding no antitrust injury alleged because "removal of one or a few competitors need not equate with an injury to competition"). Bayer has no plausible antitrust injury, and its Sherman Act claim must be dismissed.

## VIII.  BAYER'S ADDITIONAL COUNTERCLAIMS AND AFFIRMATIVE DEFENSES BASED ON INEQUITABLE CONDUCT SHOULD BE DISMISSED FOR THE SAME REASONS

Bayer's unclean-hands counterclaims, and its inequitable-conduct, unclean-hands, and W*alker Process* fraud affirmative defenses, fall with the inequitable-conduct counterclaims. Bayer's unclean-hands counterclaims do not meet Rule 9(b)'s heightened pleading requirement and should be dismissed. These counterclaims appear to rest on the IC allegations (*see* Bossard CC ¶¶ 153-54; Bentley CC ¶¶ 163-64), and, as such, Bayer's allegations must be plead with the same specificity required under Rule 9(b). *See Cephalon, Inc. v. Slayback Pharma LLC*, No. 17-1154, 2019 WL 3497105, at \*1 (D. Del. Aug. 1, 2019) (Connolly, J.). Accordingly, Bayer's failure to plead its IC counterclaims with the requisite particularity under Rule 9(b) also necessitates dismissal of its unclean-hands counterclaims. *Id.*

28

Bayer's affirmative defenses concerning IC, unclean hands, and *Walker Process* fraud should be stricken under Rule 12(f) because they fall with the corresponding, improperly pled counterclaims. Rule 12(f) states that a court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Courts may use Rule 12(f) to "strike affirmative defenses where a party has failed to state a corresponding claim upon which relief can be granted." *XpertUniverse*, 868 F. Supp. 2d at 379-83. This District has found that a party's affirmative defenses that correspond to related counterclaim allegations "rise[] or fall[]" together. *Senju*, 921 F. Supp. 2d at 306. Because Bayer's counterclaims concerning IC, unclean hands, and *Walker Process* fraud do not meet the heightened pleading standards required to survive a motion to dismiss under Rule 12(b)(6), the Court should also strike Bayer corresponding affirmative defenses under Rule 12(f).

## IX.   IN THE ALTERNATIVE, THE INEQUITABLE-CONDUCT, UNCLEAN-HANDS, AND *WALKER PROCESS* ISSUES SHOULD BE BIFURCATED

Should the Court deny all or part of Plaintiffs' motion, Plaintiffs respectfully request that the IC, unclean hands, and *Walker Process* issues be bifurcated. "A court is authorized to bifurcate any issue or counterclaim '[f]or convenience, to avoid prejudice, or to expedite and economize . . . .'" *Eurand Inc. v. Mylan Pharm. Inc.*, No. 08-889, 2009 WL 3172197, at *1 (D. Del. Oct. 1, 2009) (Robinson, J.) (citing Fed. R. Civ. P. 42(b)). "When exercising this broad discretion, courts should consider whether bifurcation will avoid prejudice, conserve judicial resources, and enhance juror comprehension of the issues presented in the case." *SenoRx, Inc. v. Hologic, Inc.*, 920 F. Supp. 2d 565, 567 (D. Del. 2013).

Many considerations favor bifurcation here, including: (i) IC is an issue for the Court, not a jury, and without bifurcation a jury could hear unfairly prejudicial evidence of alleged IC; (ii) a seven-day trial has long been set (*see* D.I. 293 ¶ 18(a)), and adding IC, unclean-hands, and

29

*Walker Process* issues would require a longer trial (the trial date was originally scheduled for January 21, 2020 (see D.I. 44 ¶ 18; D.I. 132 ¶ 18(a)) but has already been moved twice and now possibly a third time to accommodate the existing case scope); (iii) determining validity and infringement first may eliminate the need for additional trials on IC or *Walker Process*, thus conserving judicial resources; and (iv) fact discovery is nearly finished (see D.I. 293 ¶ 3)—with the parties discussing a small schedule adjustment to complete already noticed depositions—but Bayer's last-minute allegations of IC, unclean hands, and *Walker Process* fraud may require additional discovery; bifurcation would provide an avenue for that discovery, which can be tailored to any remaining IC, unclean-hands, and *Walker Process* claims.  Thus, to the extent that any IC, unclean-hands, or *Walker Process* claim remains in the case, they should be bifurcated.

## X.    CONCLUSION

Based on the foregoing, Plaintiffs respectfully request that the Court grant Plaintiffs' Motion and: (i) dismiss Bayer's IC, unclean-hands, and *Walker Process* fraud counterclaims in Counts 1 though 8 in the Bossard counterclaims and Counts 1 through 5 in the Bentley counterclaims (Bossard CC ¶¶ 173, 178, 183, 188, 193, 198, 203, 208; Bentley CC ¶¶ 183, 189, 195, 201, 207) and strike the related factual allegations; (ii) dismiss Bayer's *Walker Process* antitrust claims and strike related factual allegations; (iii) strike Bayer's Fifteenth, Sixteenth, and Seventeenth Affirmative Defenses (D.I. 333) and Fourteenth, Fifteenth, and Sixteenth Affirmative Defenses (D.I. 381); and strike Bayer's requested relief for treble attorneys fees and an injunction (*see* Bossard CC, Prayer for Relief ¶¶ E, F; Bentley CC, Prayer for Relief ¶¶ E, F).

<table>
<tr><td></td><td><u>/s/ Kelly E. Farnan</u></td></tr>
</table>

|  |  |
|---|---|
| *Of Counsel:* | Frederick L. Cottrell, III (#2555) |
|  | Kelly E. Farnan (#4395) |
| Edgar H. Haug | Nicole K. Pedi (#6236) |
| Angus Chen | RICHARDS, LAYTON & FINGER, P.A. |
| Porter F. Fleming | One Rodney Square |
| Richard F. Kurz | 920 North King Street |
| Erika V. Selli | Wilmington, Delaware 19801 |
| HAUG PARTNERS LLP | Tel: (302) 651-7700 |
| 745 Fifth Avenue | cottrell@rlf.com |
| New York, New York 10151 | farnan@rlf.com |
| Tel: (212) 588-0800 | pedi@rlf.com |
| ehaug@haugpartners.com |  |
| achen@haugpartners.com |  |
| pfleming@haugpartners.com | *Attorneys for Plaintiffs* |
| rkurz@haugpartners.com | *Baxalta Inc., Baxalta US Inc.,* |
| eselli@haugpartners.com | *and Nektar Therapeutics* |

Dated: November 8, 2019

31