IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| BAXALTA INCORPORATED, BAXALTA US INC. and NEKTAR THERAPEUTICS, | ) ) ) ) | |
| Plaintiffs and Counterclaim Defendants, | ) ) ) | C.A. No. 17-1316 (RGA) (SRF) CONSOLIDATED |
| v. | ) ) | **REDACTED - PUBLIC VERSION** |
| BAYER HEALTHCARE LLC, | ) ) | |
| Defendant and Counterclaim Plaintiff. | ) ) | |

### BAYER HEALTHCARE LLC'S OPENING BRIEF IN SUPPORT OF ITS MOTION TO CORRECT INVENTORSHIP PURSUANT TO 35 U.S.C. § 256 AND TO DISMISS PURSUANT TO FED. R. CIV. P. 12(B)(1)

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Rodger D. Smith II (#3778)
Michael J. Flynn (#5333)
Jennifer A. Ward (#6476)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
rsmith@mnat.com
mflynn@mnat.com
jward@mnat.com

*Attorneys for Defendant Bayer HealthCare LLC*

OF COUNSEL:

Bradford J. Badke
Sona De
Ching-Lee Fukuda  Julie L. Hsia
Timothy Q. Li
SIDLEY AUSTIN  LLP
787 Seventh Avenue
New York, NY  10019
(212) 839-5300

Sue Wang   Saurabh Prabhakar
SIDLEY AUSTIN LLP
555 California Street, Suite 2000
San Francisco, CA  94104
(415) 772-1200

Paul J. Zegger
Lauren Cranford Katzeff
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, DC  20005
(202) 736-8711

Original Filing Date: June 30, 2020
Redacted Filing Date: July 8, 2020

## **TABLE OF CONTENTS**

I.      INTRODUCTION ...................................................................................................... 1

II.     NATURE AND STAGE OF PROCEEDINGS .................................................... 2

III.    STATEMENT OF FACTS ....................................................................................... 3

        A.      Drs. Tomic and Harris Consulted on Pegylated Factor VIII in the 1990s and
                Conceived of Factor VIII Conjugates with One to Three Large PEGs ............... 3

        B.      Dr. Harris Collaborated with Named Inventor Dr. Bentley ................................. 6

        C.      The Bentley Patents ............................................................................................. 8

        D.      The Bossard Patents ............................................................................................ 9

        E.      Bayer Entitlement Actions in Germany ............................................................ 10

IV.     LEGAL STANDARDS ......................................................................................... 11

        A.      Correcting Inventorship .................................................................................... 11

        B.      Joint Invention By Multiple Co-Inventors ....................................................... 11

        C.      Corroboration .................................................................................................... 12

        D.      Lack of Standing ............................................................................................... 13

V.      ARGUMENT ......................................................................................................... 14

        A.      Drs. Tomic and Harris Are Omitted Co-Inventors of the Bossard Patents ......... 14

                1.      The Concept of The Bossard patents ...................................................... 14

                2.      Drs. Tomic and Harris Made Substantial Contributions to the Conception
                        of the Bossard patents .............................................................................. 14

        B.      Drs. Tomic and Harris Are Omitted Co-Inventors of the Bentley Patents ......... 18

                1.      The Concept of the Bentley Patents ........................................................ 18

                2.      Drs. Tomic and Harris Made Substantial Contributions to the Conception
                        of the Bentley Patents .............................................................................. 18

        C.      Correction Is Warranted and this Case Should Be Dismissed ............................ 20

VI.     CONCLUSION ...................................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Burroughs Wellcome Co. v. Barr Labs., Inc.,*
40 F.3d 1223 (Fed. Cir. 1994) ..................................................................... 11, 12, 18

*Church of Universal Bhd. v. Farmington Twp. Sup'rs,*
296 F. App'x 285 (3d Cir. 2008) ................................................................... 13

*CODA Dev. S.R.O. v. Goodyear Tire & Rubber Co.,*
916 F.3d 1350 (Fed. Cir. 2019) .................................................................... 11

*Eli Lilly & Co. v. Aradigm Corp.,*
376 F.3d 1352 (Fed. Cir. 2004) .................................................................... 12

*Ethicon, Inc. v. U.S. Surgical Corp.,*
135 F.3d 1456 (Fed. Cir. 1998) ............................................................ *passim*

*Falana v. Kent State Univ.,*
669 F.3d 1349 (Fed. Cir. 2012) .................................................................... 12

*Fina Oil & Chem. Co. v. Ewen,*
123 F.3d 1466 (Fed. Cir. 1997) .................................................................... 11, 12

*Israel Bio-Eng'g Project v. Amgen, Inc.,*
475 F.3d 1256 (Fed. Cir. 2007) .................................................................... 13

*Kimberly-Clark Corp. v. Procter & Gamble Distrib. Co.,*
973 F.2d 911 (Fed. Cir. 1992) ...................................................................... 12

*Monsanto Co. v. Kamp,*
269 F. Supp. 818 (D.D.C. 1967) ................................................................... 12

*Pannu v. Iolab Corp.,*
155 F.3d 1344 (Fed. Cir. 1998) .................................................................... 12

*Price v. Symsek,*
988 F.2d 1187 (Fed. Cir. 1993) .................................................................... 12, 13

*Stark v. Advanced Magnetics, Inc.,*
119 F.3d 1551 (Fed. Cir. 1997) .................................................................... 11

*Trovan, Ltd. v. Sokymat SA, Irori,*
299 F.3d 1292 (Fed. Cir. 2002) .................................................................... 11

*Vanderbilt Univ. v. ICOS Corp.*,
　601 F.3d 1297 (Fed. Cir. 2010)................................................................................12

**Rules and Statutes**

35 U.S.C. § 116................................................................................................11, 12

35 U.S.C. § 256................................................................................................11, 20

35 U.S.C. § 256(b)............................................................................................1, 11

35 U.S.C. § 281....................................................................................................13

## I.   INTRODUCTION

Defendant Bayer HealthCareLLC ("Bayer") moves for (i) an evidentiary hearing and order pursuant to 35 U.S.C. § 256(b) directing the Patent Office ("PTO") to issue a certificate correcting inventorship of the Bossard and Bentley patents[1] to add Dr. Milan Tomic and Dr. Milton Harris as inventors, and (ii) dismissal of this suit because Nektar and Baxalta lack standing under the correct inventorship.  No change to the status of the originally named inventors of these two patent families is sought by this motion.

Each of the Bossard patents contains claims directed to the central concept ████  ████████████████████████ Ex. 2 ("Bossard Tr."), at 55:10-20.[2]  This concept, which runs through all the Bossard patents, was conceived in the 1990s by Bayer's Dr. Tomic in consultation with Dr. Harris, then-President (and founder) of Shearwater Polymers, Inc., which became Nektar.  From 1992 through 1994, Dr. Tomic purchased custom PEGs from Shearwater for his pegylated Factor VIII research and Dr. Harris served as a consultant on that research.  During that time, they regularly communicated about Dr. Tomic's work, with Dr. Harris providing input on PEG derivatives and reactivities.  After Drs. Tomic and Harris parted ways, Dr. Harris worked closely with named inventor and Shearwater employee Dr. Michael Bentley on numerous aspects of Shearwater's research and business.  Through this collaboration, Dr. Harris communicated to Dr. Bentley the benefits of pegylating proteins with few, large PEGs—the concept he had learned from Dr. Tomic.  This concept and its variations were ultimately claimed in the Bossard patents.

---

[1]   U.S. Patent Nos. 7,199,223; 7,863,421; 8,247,536; 8,519,102; 8,618,259; 8,889,831; and 9,999,657 (collectively, the "Bossard patents") and U.S. Patent Nos. 7,872,072; 8,273,833; 8,809,453; and 9,187,569 (collectively, the "Bentley patents"). These patents are currently assigned to plaintiff Nektar Therapeutics (Nektar) and are licensed to plaintiffs Baxalta Incorporated and Baxalta US Inc. (collectively, Baxalta). D.I. 281 ¶¶ 41, 44, 50, 53, 59, 62; C.A. No. 18-1355-RGA, D.I. 1 ¶¶ 16, 19, 22, 25.

[2]   "Ex. __" refers to the corresponding Exhibit and page(s) attached to the Declaration of Timothy Q. Li submitted herewith.

The Bentley patents contain claims directed to branched PEGs and their conjugates including, in the '569 Patent, Factor VIII conjugates.  D.I. 454, Ex. 19 ("Russell Op. Rep."), at ¶¶ 73, 83.  These claimed inventions are also the product of Dr. Tomic's contributions in consultation with Dr. Harris that originated in Dr. Tomic's pegylated Factor VIII research.

Drs. Tomic and Harris should be added as co-inventors of the Bossard and Bentley patents because they made substantial inventive contributions to their claims.  As the owner and assignee of Dr. Tomic's interest in the patents, Bayer respectfully requests that the Court set a hearing so concerned parties may be heard and then issue an order directing the PTO to correct inventorship on the Bossard and Bentley patents and dismiss this case because Nektar and Baxalta lack standing under the correct inventorship.

## II.   NATURE AND STAGE OF PROCEEDINGS

In September 2017 and August 2018, Plaintiffs brought suit on the Bossard and Bentley patents respectively.  The Court construed claims in both patent families in August 2019. D.I. 232, D.I. 273.  Drs. Tomic and Harris have been deposed, as have been all named inventors of the Bossard patents and all but one named inventor of the Bentley patents who resides outside the U.S.  The parties completed briefing on dispositive motions on June 19, 2020.  *See* D.I. 447-54, 462-71.  Facts and evidence related to the present motion are also addressed in Bayer's inequitable conduct counterclaims, which are the subject of a pending motion to dismiss (D.I. 383) and in Bayer's opposition to Plaintiffs' motion for partial summary judgment on Bayer's § 102(f) and § 102(g) defenses (D.I. 463 at 8-26), though different legal standards apply here, and inventorship is decided after an evidentiary hearing.  Trial is set for September 21, 2020. D.I. 446.

## III.   STATEMENT OF FACTS

### A.   Drs. Tomic and Harris Consulted on Pegylated Factor VIII in the 1990s and Conceived of Factor VIII Conjugates with One to Three Large PEGs

In the early 1990s, Bayer began researching pegylating Factor VIII as a way to improve Factor VIII therapies.  Dr. Tomic joined Bayer in 1992 and soon started working on pegylating Factor VIII.  Ex. 3 ("Tomic Tr."), at 19:3-7, 27:16-28:2.  He eventually came to lead aspects of that project at Bayer, including selecting the PEGs and binding chemistries that his team used.  Ex. 4 ("Helgeson Tr."), at 59:16-20; Ex. 5 ("Antonsen Tr."), at 69:7-12.

Bayer's goals in pegylating Factor VIII included, *e.g.*, retaining activity and extending half-life (the amount of time Factor VIII remains in the body).  Tomic Tr. 30:16-31:22; Ex. 6 (C.A. No. 16-1122-RGA, Trial Tr. ("Trial Tr.")), at 209:8-23.  It was Dr. Tomic's idea to pegylate Factor VIII with fewer large PEGs—*i.e.*, greater than 5 kDa in molecular weight—rather than with many small PEGs.  Tomic Tr. 190:4-14, 78:23-79:2; Ex. 7 at JIVIBAYER1250524-25; Trial Tr. 212:10-213:2.  Dr. Tomic's approach would reduce the number of PEG attachment points, and consequently the risk of impacting active sites, while achieving the same half-life extension from pegylation.  Trial Tr. 212:16-213:2; D.I. 452, Ex. 2 ("Ravetch Op. Rep."), at ¶¶ 237-40.

By August 1992, Dr. Tomic had also identified branched PEGs as a potentially useful large PEG structure for reducing the number of attachments.  Ex. 7 at JIVIBAYER1250524-25.  Branching allows multiple linear PEGs to be loaded onto a core.  That core then has a single point of attachment to bind with Factor VIII.  Russell Op. Rep. ¶¶ 64, 402.  The multiple PEG "arms" create steric hindrance preventing the reactive end of the PEG molecule from binding to amino acid residues buried in crevices on the three-dimensional Factor VIII molecule.  Ex. 7 at JIVIBAYER1250526.  As such, branched PEGs were expected to be "more selective" in binding to Factor VIII and thus result in fewer attachments.  *Id.*; Ravetch Op. Rep. ¶¶ 237-39.  Dr. Tomic

reported plans to pursue branched PEG Factor VIII conjugates in July and August 1993, referring to

a ██████████████ ███████████████ where ███████████████████████████████

████████ Ex. 8 at JIVIBAYER1138965; *see also* D.I. 464, Ex. 48 at JIVIBAYER0714460-62;

Ex. 9 at BAYER0022261-65 (preliminary experiments with "████████████████████████████

From 1993 through 1994, Dr. Tomic and his colleagues made Factor VIII conjugates

with a variety of PEGs larger than 5 kDa to identify ones that would satisfy Bayer's activity and

half-life goals.[4]  *See generally* Ex. 13 at BAYER0073520-21.  The resulting conjugates had as few

as one PEG per Factor VIII molecule and retained activity.  *See, e.g.*, *id.*; D.I. 464, Ex. 43 at

JIVIBAYER1218708.  In July 1993, Dr. Tomic reported that a 25 kDa pegylated Factor VIII

retained ████████ ██████████ and had ██████████████████████attached.   Ex. 8 at

JIVIBAYER1138964; Ex. 14 at JIVIBAYER1138943.  With respect to cysteine-binding VS-PEG,

Dr. Tomic reported in June 1994 that the ratio of PEG to Factor VIII was ████████████

██████████████Ex. 15 at BAYER0072763; Ravetch Op. Rep. ¶¶ 242-245, 910; D.I. 464, Ex. 9 at

JIVIBAYER1179970, 972-73 (████████████████████ ██████████████████████████

████████████.  In July 1994, Dr. Tomic observed that three PEGs per Factor VIII may

be an "████████"and concluded that "████████████████████████████████

████████████) Ex. 10 at BAYER0017280; *see also* Ex. 16 at BAYER0211608 (similar

observations in October 1994).

The pegylated Factor VIII research by Dr. Tomic and his colleagues was extensive

and included *in vivo* testing of several conjugates in hemophilic dogs.  *E.g.*, Ex. 17 at

---

[3]      This PEG has two PEG arms attached to a lysine amino acid core.  Russell Op. Rep. ¶¶ 110, 124.  The PEG is then activated using a functional group, like NHS (for binding a protein's lysine residues) or maleimide (for binding a protein's cysteine residues). *Id.* ¶¶ 110, 115, 125.

[4]  ████████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████

BAYER0142377 ███████████████████████████████████

███████; Ex. 18 at BAYER0016233 (███████████ ███████████; Ex. 19 at

BAYER0015616 (lysine-binding SPA-PEG showed 1.7 fold half-life extension); Ravetch Op. Rep.

¶ 247.  According to Bayer's then-V.P. of R&D, Mr. Michael Fournel, Dr. Tomic's results in the

1990s were a "proof of concept" that pegylating Factor VIII with few, large PEGs could extend half-

life and retain activity.  *E.g.*, Trial Tr. 212:23-213:2, 220:25-221:12; Ex. 20 ("Fournel Tr."), at 27:5-

24, 28:24-30:14, 48:16-52:9; 86:10-20; 141:14-143:14.

   In the same 1992-1994 timeframe, Dr. Tomic consulted with Dr. Harris on this

pegylated Factor VIII project.  Dr. Harris's role was to supply PEGs through Shearwater and to

provide input as to those PEGs and their "reactivities."[5]  Tomic Tr. at 146:13-17, 148:3-10, 155:17-

24.  During the course of the project, Drs. Tomic and Harris communicated regularly on "various

things" related to Dr. Tomic's pegylated Factor VIII work.  *Id.* at 149:8-18; *e.g.*, D.I. 464, Ex. 5 at

BAYER0023179 (1992); D.I. 464, Ex. 6 at JIVIBAYER0635377-78 (1993); D.I. 464, Ex. 7 at

BAYER0022486 (1994); D.I. 464, Ex. 8 at BAYER0021463 (1994); Ravetch Op. Rep. ¶¶ 267-69.

Dr. Tomic also told Dr. Harris the size and functionality of the PEGs he wanted, as well as his plan

to pegylate Factor VIII with those PEGs.  Tomic Tr. 147:4-16, 150:8-20.

   On May 3, 1994, Dr. Harris met with Dr. Tomic and other Bayer scientists in a multi-

hour meeting about Bayer's pegylated Factor VIII project.  Ex. 10 at BAYER0017301; Ex. 21 at

JIVIBAYER0714262; Ex. 22 ("Harris Tr."), at 70:5-8, 71:6-71:20.  There, Dr. Tomic and his

colleagues discussed their work in detail with Dr. Harris.  Tomic Tr. 153:23-154:5; Helgeson Tr.

179:9-12 ████████████████████████████████████

---

[5] Dr. Tomic's notes indicate that Bayer and Dr. Harris had a non-disclosure agreement that
allowed Dr. Tomic to communicate freely with Dr. Harris, D.I. 464, Ex. 6 at JIVIBAYER0635375
and D.I. 464, Ex. 9 at JIVIBAYER1179956, consistent with the understanding of other Bayer
scientists at the time, Ex. 21 at JIVIBAYER0714264.

████████████████████████████████"); D.I. 464, Ex. 9 at JIVIBAYER1179970. Dr. Tomic testified that he shared with Dr. Harris the results of experiments with large PEGs and their recognized advantages, and was "quite certain" the binding of few PEGs was discussed during that visit. *E.g.*, D.I. 464, Ex. 9 at JIVIBAYER1179960, 965. These discussions are reflected in the contemporaneous notes of Bayer scientist Eric Helgeson, who worked on Dr. Tomic's team. Helgeson Tr. 177:13-178:12; Ex. 21 at JIVIBAYER0714264-65. Notably, the notes reflect discussion of the ███████████████████████ demonstrating the concept of few, large PEGs attached to Factor VIII. Ex. 21 at JIVIBAYER0714264. Discussion of branched PEGs and cysteine-binding PEGs are also referenced in the notes. *Id.* at JIVIBAYER0714262-64.

These communications with Dr. Harris continued after the May 1994 meeting. A few weeks later, Bayer's Dr. Kris Antonsen received from Shearwater a 40 kDa branched, lysine-binding PEG that Shearwater called "PEG2NHS" and used it to pegylate Factor VIII. *See* Antonsen Tr. 110:19-111:4, 115:6-116:12; Ex. 12 at BAYER0010186. In a October 31, 1994 memo, Dr. Tomic referenced further input from Dr. Harris about pegylation. Ex. 16 at BAYER0211608. Dr. Tomic's collaboration with Dr. Harris continued until 1995. Tomic Tr. 151:23-152:6.[6]

As a Bayer employee during this work, Dr. Tomic's inventions belong to Bayer, and he has assigned his interest in the Bossard and Bentley patents to Bayer. *See* Ex. 1.

**B.    Dr. Harris Collaborated with Named Inventor Dr. Bentley**

After collaborating with Dr. Tomic, Dr. Harris worked with other Shearwater scientists to patent and publish the concepts he had learned from Bayer. Dr. Harris testified, without crediting Dr. Tomic, that ████████████████████████████████████████████

---

[6]    Dr. Harris continued communicating with Bayer. In August 1998, he signed another non-disclosure agreement on behalf of Shearwater ██████████████████████████████████████████████████████████████████████████████████████ D.I. 464, Ex. 36 at BAYER0023868.



Harris Tr. 203:21-204:19.

*Id.*

*Id.* 204:20-205:5, 205:12-22.  The dissemination and application of the concept of few, large PEGs attached to other proteins is reflected in Dr. Harris's publications after his work with Dr. Tomic.  *E.g.*, D.I. 464, Ex. 21; D.I. 464, Ex. 22; D.I. 464, Ex. 23.

Dr. Harris worked closely with named inventor Dr. Bentley to file numerous patents and publish numerous articles.  D.I. 464, Ex. 25.  Dr. Bentley later joined Dr. Harris at Shearwater in 1997, first as a Manager and then as V.P. of Research at Shearwater (1999-2001) and Nektar (2001-2006).  Bentley Tr. 22:7-23:4, 25:15-17; D.I. 464, Ex. 25.

[REDACTED]

In May 1998, Drs. Harris and Bentley filed a patent application as co-inventors that issued as U.S. Patent No. 5,990,237. Ex. 24 ('237 patent).  The '237 patent, which was written by either Dr. Harris or Dr. Bentley, discloses a branched PEG and states that PEGs—including branched PEGs—could be up to 100 kDa in size.  '237 patent at col. 6:35-36, 7:16-17, 8:40; Harris Tr. 149:9-150:23.  Drs. Harris and Bentley thus collaborated on large, branched PEGs at a minimum.

[REDACTED]

## C.   The Bentley Patents

The Bentley patents all name the same four inventors:  Michael Bentley, Xuan Zhao, Xiaoming Shen, and William Dudley Battle and claim priority to a November 7, 2001 provisional patent application, III.  C.A. No. 18-1355-RGA, D.I. 1, Ex. B-E.  The Bentley patents share a common specification and claim branched PEGs and their conjugates—including with Factor VIII.

The Bentley patents depict, as Formula I in the specification, [REDACTED]

[REDACTED] "PEG2NHS" is the same branched PEG (discussed *supra* pp. 4, 6) in Dr. Tomic's notes and used by Bayer to pegylate Factor VIII.  Russell Op. Rep. ¶ 152.  [REDACTED]

[REDACTED]

Dr. Bentley admitted he consulted with Dr. Harris on the '237 patent as his co-inventor, [REDACTED]

[REDACTED].[7] Bentley Tr. 148:20-149:14.  Moreover, although the Bentley specification discloses Factor VIII as a protein for conjugation and the '569 patent actually recites Factor VIII conjugates, none of the named Bentley inventors claimed credit or credited any other named co-inventor for identifying and including Factor VIII in their patents. *See* Bentley Tr. 71:9-72:5, 73:7-18; Ex. 25 ("Shen Tr."), at 123:19-124:5; Ex. 26 ("Battle Tr."), at 42:16-43:7.[8]

### D.   The Bossard Patents

The Bossard patents all name the same three inventors:  Mary J. Bossard, Michael D. Bentley, and Ping Zhang and claim priority to a February 26, 2003 provisional application ("Bossard provisional").  D.I. 281, Ex. A-B, D-G, Q.  The Bossard patents share a common specification and claim Factor VIII conjugates, [REDACTED]

[REDACTED] Bossard Tr. 55:10-20.

Named inventor Dr. Bossard was hired by Dr. Bentley in October 2002.  Bossard Tr. 14:3-6, 16:17-19, 17:10-13. [REDACTED]

[REDACTED] Dr. Bossard did not have any prior hands-on experience with pegylation or Factor VIII.  Ex. 27 ("Bossard DE1 Tr."), at 44:4-18.

---

[7]     The Court need not determine why Dr. Harris was omitted as an inventor of the Bossard and Bentley patents to grant Bayer's motion to correct inventorship.  But should the Court find that reason to be helpful, as explained in Bayer's inequitable conduct counterclaims, Dr. Harris appears to have failed to name himself as an inventor to avoid having to assign these patents to the University of Alabama.  *See* D.I. 331 CC ¶¶ 134-150; D.I. 333 CC ¶¶ 122-138; *see also* Harris Tr. 232:19-233:19, 234:14-235:8, 235:19-236:5, 237:7-238:16, 238:22-240:11.

[8]     Mrs. Shen and Battle were not named on the Bentley provisional and could not identify specific contributions beyond performing experiments for the working examples described in the issued patents. Shen Tr. 80:18-81:9, 85:13-25, 124:22-125:23, 163:7-164:3; Battle Tr. 35:21-36:4.

Dr. Bentley told Dr. Bossard to assess the technical feasibility of pegylating Factor VIII and gave her literature on Factor VIII and pegylation—including articles by Dr. Harris—to get started.  Bossard Tr. 20:9-21:14, 22:10-16; Bossard DE1 Tr. 55:4-15, 91:5-93:2.  Dr. Bossard also ran extensive literature searches.  Bossard Tr. 20:23-21:5, 22:10-22:16, 26:5-28:2, 60:25-61:5, 69:10-20.  ███

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

███████████████████████████████████████████  Dr. Harris consulted on the large PEG conjugate in the Bailon paper.  Harris Tr. 157:4-159:4.

The Bossard provisional, filed soon after Dr. Bossard joined Nektar,[9] has only prophetic examples with no basis in experimental data (Nektar had no Factor VIII at the time). Bossard DE1 Tr. 44:4-18, 107:10-19, 115:23-116:8.  ███████████████████████████████

██████████████████████████████████████████████████  *Id.* at 107:10-108:15.

### E.  Bayer Entitlement Actions in Germany

In 2013, Bayer initiated a German Entitlement Action against the German counterpart to the Bossard '223 patent based on Dr. Tomic's contributions.  Both Drs. Tomic and Harris testified live regarding their interactions in the 1990s.  Other Bayer scientists involved in that work also testified live.  Although the German court has not fully decided the case, it issued preliminary findings on that testimony, ████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████  D.I. 464, Ex. 15 at JIVIBAYER1180067-068; D.I. 464, Ex. 15 at JIVIBAYER0715194.  After finding out about the Bentley patents in 2018, Bayer also filed a

---

[9]   Named inventor Ms. Zhang was not originally named on the Bossard provisional.  She was added later and credited with doing the experimental work described in the working examples of the Bossard patents.  Ex. 28 ("Zhang Tr."), at 79:7-25, 87:7-88:5.

German Entitlement Action against the counterparts of the Bentley patents based on Dr. Tomic's contributions.  *E.g.*, Ex. 29 ("Immler Tr."), at 71:20-74:17.

## IV.   LEGAL STANDARDS

### A.   Correcting Inventorship

A court can order the correction of inventorship of a U.S. Patent "on notice and hearing of all parties concerned."[10] 35 U.S.C. § 256(b); *Stark v. Advanced Magnetics, Inc.*, 119 F.3d 1551, 1553 (Fed. Cir. 1997).  Correction may be made under this section "even where there is not a consensus on the correct inventorship as long as all parties are given notice and an opportunity to be heard."  *Fina Oil & Chem. Co. v. Ewen*, 123 F.3d 1466, 1471 (Fed. Cir. 1997).

### B.   Joint Invention By Multiple Co-Inventors

Inventions can be jointly made by co-inventors.  35 U.S.C. § 116.  "Because '[c]onception is the touchstone of inventorship,' each joint inventor must generally contribute to the conception of the [joint] invention."  *Ethicon, Inc. v. U.S. Surgical Corp.*, 135 F.3d 1456, 1460 (Fed. Cir. 1998) (quoting *Burroughs Wellcome Co. v. Barr Labs., Inc.*, 40 F.3d 1223, 1227-28 (Fed. Cir. 1994)).  Conception is the formation in an inventor's mind of a definite and permanent idea of the complete and operative invention, as it is to be used in practice.  *See Burroughs Wellcome*, 40 F.3d at 1227-28.  An omitted co-inventor seeking correction under § 256 must prove his contribution to the conception of the claims by clear and convincing evidence.  *See Ethicon*, 135 F.3d at 1461.

Inventorship is determined on a claim-by-claim basis, and "[a] contribution to one claim is enough" for purposes of establishing co-inventorship of a patent.  *Id.* at 1460.  An inventor's

---

[10]     Lack of deceptive intent is no longer required to add an inventor under § 256 pursuant to the America Invents Act ("AIA").  *See CODA Dev. S.R.O. v. Goodyear Tire & Rubber Co.*, 916 F.3d 1350, 1358 n.6 (Fed. Cir. 2019) (the AIA removed the requirement of no deceptive intent for nonjoinder cases under § 256 in proceedings commenced on or after September 16, 2012).

contributions are compared to the subject matter of properly construed claims. *Trovan, Ltd. v. Sokymat SA, Irori*, 299 F.3d 1292, 1304 (Fed. Cir. 2002).

Co-inventions arise from joint behavior, "such as collaboration or working under common direction, one inventor seeing a relevant report and building upon it or hearing another's suggestion at a meeting," *Kimberly-Clark Corp. v. Procter & Gamble Distrib. Co.*, 973 F.2d 911, 917 (Fed. Cir. 1992), or when the co-inventors "have some open line of communication during or in temporal proximity to their inventive efforts." *Falana v. Kent State Univ.*, 669 F.3d 1349, 1358 (Fed. Cir. 2012) (quoting *Eli Lilly & Co. v. Aradigm Corp.*, 376 F.3d 1352, 1359 (Fed. Cir. 2004)). Co-inventors need not have worked physically together or contemporaneously. *See* 35 U.S.C. § 116; *Monsanto Co. v. Kamp*, 269 F. Supp. 818, 824 (D.D.C. 1967). And each contributor "need not have their own contemporaneous picture of the final claimed invention." *Vanderbilt Univ. v. ICOS Corp.*, 601 F.3d 1297, 1303 (Fed. Cir. 2010).

Co-inventors also need not have contributed equally. 35 U.S.C. § 116. A co-inventor's contribution must only be "not insignificant in quality, when that contribution is measured against the dimension of the full invention." *Fina Oil*, 123 F.3d at 1473; *see also Burroughs Wellcome*, 40 F.3d at 1229 ("the qualitative contribution of each collaborator is the key—each inventor must contribute to the joint arrival at a definite and permanent idea of the invention as it will be used in practice"). There is "no explicit lower limit on the quantum or quality of inventive contribution required for a person to qualify as a joint inventor." *Fina Oil*, 123 F.3d at 1473; *see also Pannu v. Iolab Corp.*, 155 F.3d 1344, 1351 (Fed. Cir. 1998). The co-inventorship determination is fact specific and "no bright-line standard will suffice in every case." *Fina Oil*, 123 F.3d at 1473.

C.    **Corroboration**

An inventor's oral testimony on conception must generally be corroborated. *See Price v. Symsek*, 988 F.2d 1187, 1194 (Fed. Cir. 1993). Sufficiency of corroboration is evaluated

under a rule of reason wherein "*all* pertinent evidence must be made so that a sound determination of the credibility of the [alleged] inventor's story may be reached." *Ethicon*, 135 F.3d at 1461 (emphasis and alteration in original) (quoting *Price*, 988 F.2d at 1195). Corroborating evidence may take many forms including "contemporaneous documents prepared by a putative inventor," "[c]ircumstantial evidence about the inventive process," and "oral testimony of someone other than the alleged inventor." *Ethicon*, 135 F.3d at 1461.

### D.    Lack of Standing

"A defendant's motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) may be treated as either a facial or factual challenge to the court's subject matter jurisdiction." *Church of Universal Bhd. v. Farmington Twp. Sup'rs*, 296 F. App'x 285, 287-88 (3d Cir. 2008). For factual challenges, "the Court is free to weigh the evidence and satisfy itself whether it has power to hear the case.... [N]o presumptive truthfulness attaches to plaintiff's allegations." *Id.* "The party asserting subject matter jurisdiction bears the burden of proving that it exists." *Id.*

"Standing to sue for infringement stems from the Patent Act." *Israel Bio-Eng'g Project v. Amgen, Inc.*, 475 F.3d 1256, 1264-65 (Fed. Cir. 2007) (citing 35 U.S.C. § 281). Because all co-owners of a patent must consent to join in a suit, "one co-owner has the right to impede the other co-owner's ability to sue infringers by refusing to voluntarily join in such a suit." *Ethicon*, 135 F.3d at 1459, 1468 (affirming dismissal of infringement suit after district court held evidentiary hearing and found that unnamed co-inventor contributed to patent and did not consent to infringement suit).

## V.     ARGUMENT

### A.     Drs. Tomic and Harris Are Omitted Co-Inventors of the Bossard Patents

#### 1.     The Concept of The Bossard patents

At least one claim of each asserted Bossard patent recites a Factor VIII "moiety" or "polypeptide" conjugated with one to three large PEGs (over 5 kDa) or a variation thereof.[11] *See* Appendix I (illustrative claims).

The Court construed terms in these claims broadly, at Plaintiffs' urging. *See* D.I. 232. "Factor VIII moiety/polypeptide" was construed as a "[moiety/protein] having Factor VIII activity." *Id.*[12]  The Court's constructions do not change the fact that a "major component" of the Bossard patent claims is the concept of "very few large PEGs combined with Factor VIII."  Bossard Tr. 55:10-20; *see* Ravetch Op. Rep. ¶ 937.  Indeed, the '223 parent patent was allowed based on the alleged novelty of attaching one, two, or three large PEGs to Factor VIII.  *See* D.I. 333 CC at ¶ 79, Ex. 30 at 3-14 (February 2006 PTO rejection), Ex. 31 at 2, 9-11 (August 2006 Amendment to add limitation of "1-mer, 2-mer, or 3-mer," making the "upper limit" "abundantly clear"); Ex. 32 (November 2006 Allowance based on this amendment).  This concept of a maximum of three PEGs per Factor VIII underlies all of the Bossard patents and was invented by Dr. Tomic in consultation with Dr. Harris.

#### 2.     Drs. Tomic and Harris Made Substantial Contributions to the Conception of the Bossard patents

Dr. Tomic's work established that Factor VIII conjugates with one to three large PEGs retained activity, and Dr. Harris contributed this discovery to the Bossard patents through his collaboration with named inventor Dr. Bentley.

---

[11]     As detailed *supra* § III.A, Dr. Tomic's work also contributed specific limitations of these variations of the core concept.  Those contributions are identified in Appendix I hereto.

[12]     The '102 patent specifies at least 15% activity in the pegylated conjugate; the other Bossard patents' claims are largely silent on the level of activity retention.  *See* Appendix I; D.I. 232.

– 14 –

As detailed *supra* § III.A, Dr. Tomic and his colleagues, while consulting with Dr. Harris, established, through experimental data, that Factor VIII pegylated with one to three large PEGs attached retained activity.  Dr. Tomic's conception of this core concept, including his appreciation of the ▮▮▮▮▮▮ of three large PEGs that could be attached to Factor VIII are well-documented.  *E.g.*, Ex. 10 at BAYER0017280; Ex. 16 at BAYER0211608.

Throughout his work, Dr. Tomic maintained an open line of communication with Dr. Harris.  *E.g.*, Harris Tr. 105:4-17; D.I. 464, Ex. 5 at BAYER0023179; D.I. 464, Ex. 6 at JIVIBAYER0635378; D.I. 464, Ex. 7 at BAYER0022486.  Their discussion of the goals and benefits of fewer large PEGs and PEG structures, sizes, and chemistries that could be used to achieve those benefits, is corroborated at least by Mr. Helgeson's notes of their May 1994 meeting.  *See supra* pp.5-6.  As such, the concept of one to three large PEGs per Factor VIII and using cysteine-binding or branched PEGs to accomplish this goal, were all communicated by Dr. Tomic to Dr. Harris, if not jointly developed by Drs. Tomic and Harris in the course of their collaboration.

With those concepts in mind, Dr. Harris then collaborated with Dr. Bentley at Shearwater and contributed to the conception of the Bossard patents' claims.  Drs. Harris and Bentley's '237 patent filed in 1998 establishes that they were collaborating on large, branched PEGs at the time.  Shearwater was also beginning to transition from being a PEG supplier to a pegylation company in the late 1990s.  *See* Harris Tr. 43:4-44:10; D.I. 464, Ex. 26 ("Wilson 1782 Tr."), at 20:13-21:9.  And 1998 was the same year that Shearwater entered another non-disclosure agreement with Bayer concerning pegylating Factor VIII.  D.I. 464, Ex. 36 at BAYER0023868.  Given Shearwater's business interests at the time, which happened to coincide with another conversation with Bayer concerning pegylated Factor VIII, it stands to reason that Dr. Harris, a well-

known expert in pegylation chemistry, would have discussed with Dr. Bentley the benefits of pegylating proteins with few, large branched PEGs during their collaboration.

Drs. Bentley and Bossard deny direct input from Dr. Harris on the Bossard patents. *See* Bentley Tr. 151:2-6; Bossard Tr. 71:2-17.  However, Dr. Harris testified ███████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

Dr. Harris was also a constant presence during the course of the Bossard patents' development. Drs.Bentley and Bossard both confirmed that Dr. Harris was aware of their work on pegylating Factor VIII.  Dr. Bentley recalls having informal discussions with Dr. Harris about pegylated Factor VIII, Bentley Tr. 150:5-11; 188:6-10, and Dr. Bossard confirmed that Dr. Harris attended high level strategy meetings where she reported on her work.  Bossard DE1 Tr. 122:13-123:1, 124:16-18.  Thus, Drs. Bentley and Bossard did not operate in a vacuum.  To the contrary, they had an open line of communication with Dr. Harris through which Dr. Bentley in particular would have learned of Dr. Tomic's concept of one to three large PEGs per Factor VIII from Dr. Harris.  Given Dr. Harris' outsized influence and authority at Shearwater/Nektar and Nektar's keen business interest in pegylating Factor VIII in the 2003 time frame, it strains credulity to believe that Dr. Harris did not pass along to at least Dr. Bentley what he learned from Bayer.

Dr. Bentley also testified in a prior case that ███████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████████████████████████████████████.  Indeed, the Bossard patents include claims to variations of the core concept using large cysteine-binding PEGs and branched PEGs.  *See* Appendix I.  Not surprisingly, Dr. Tomic testified that the Examples in the Bossard specification were familiar and reflected the PEGs *he* used in his own work with full-length Factor VIII but applied to B-domain deleted Factor VIII in the Examples.[13]  Tomic Tr. 144:17-145:23.  As discussed *supra* pp. 3-4, Dr. Tomic had also worked with large cysteine-binding and branched PEGs and discussed these PEGs with Dr. Harris.  Again, the common denominator is Dr. Harris, with whom Dr. Bentley had previously collaborated on PEGs, pegylation, and branched PEGs in particular, ████████████████████████████████████████  *E.g.*, Bentley Tr. 148:20-149:14, 187:20-188:10, 189:13-21; '237 patent col. 7:16-17.

Circumstantial evidence of the inventive process is also relevant here.  *See Ethicon*, 135 F.3d at 1461.  Dr. Bossard acknowledged that any supposed advantage to the pegylation strategies she outlined before the Bossard provisional would be unknowable without experimentation.  Bossard DE1 Tr. 108:5-7; *see generally id.* at 107:10-108:15, 115:23-116:8.

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

Bentley Tr. 160:19-23.  Yet the Bossard provisional, filed without any experimentation, identifies a preferred upper limit of three PEGs per Factor VIII, Ex. 34 (Provisional at 4 "Summary of the Invention"), and issued claims likewise rely on this upper limit, *see* Appendix I.  In view of their admissions regarding the Bossard provisional, Drs. Bossard and Bentley could not have formed a "definite and permanent idea of the [Bossard] invention as it will be used in practice" without knowledge of Dr. Tomic's experimentally determined ████████ of three PEGs per Factor VIII or

---

[13]     Bayer expert Dr. Ravetch opined that variations on Dr. Tomic's core concept using B-domain deleted or mutated Factor VIII would have been obvious.  Ravetch Op. Rep. ¶¶ 945-46.

its attendant effects on activity retention.  *See supra* p. 4; *Burroughs Wellcome*, 40 F.3d at 1227-28

(conception requires a definite and permanent idea of the invention; a research plan is not enough).

In sum, the direct and circumstantial evidence shows Dr. Harris contributed

knowledge he and Dr. Tomic obtained through their collaboration on pegylated Factor VIII in the

1990s to the conception of the "major component" in the Bossard patents.  There should be little

doubt that they should be named as co-inventors.

**B.       Drs. Tomic and Harris Are Omitted Co-Inventors of the Bentley Patents**

**1.       The Concept of the Bentley Patents**

The Bentley patents claim branched PEGs and their conjugates.  *See* Appendix I

(illustrative claims).  Based on the Court's claim construction, D.I. 273, Bayer expert Dr. Russell

opined that the branched PEGs claimed in the Bentley patents, depicted in Formulas I and Ia in the

Bentley patents' specification, would also include the earlier "PEG2NHS" and its maleimide variant

referenced in Dr. Tomic's notes and used by Bayer to pegylate Factor VIII.  Russell Op. Rep.

¶¶ 152, 223-24, 243, 298, 337, 346, 378, 388.  ███████████████████████████████████

Harris Tr. 172:20-174:6; Bentley Tr. 79:17-80:2, 80:12-82:10, 83:11-22, 86:11-87:20, 90:8-23,

91:14-21.

**2.       Drs. Tomic and Harris Made Substantial Contributions to the
            Conception of the Bentley Patents**

Drs. Tomic and Harris contributed to the Bentley patents' conception through their

earlier work on PEG2NHS, which became part of Drs. Harris and Bentley's collaboration on

branched PEGs.  As detailed *supra* pp. 3-4, Dr. Tomic appreciated the usefulness of large, branched

PEGs to limiting the number of attachment sites on a protein in as early as August 1992 and then

planned to use a 40 kDa branched PEG to pegylate Factor VIII in July and August of 1993.

Dr. Tomic communicated his PEG needs to Dr. Harris, who then made the PEGs.  Tomic Tr. 147:4-

16, 150:8-20.  In May 1994, Drs. Tomic and Harris discussed branched PEGs and, a few weeks later, Shearwater delivered 40 kDa branched PEGs to Bayer for pegylating Factor VIII.  This sequence of events is corroborated by contemporaneous documents and illustrates Drs. Tomic and Harris's collaboration in developing PEG2NHS for use with Factor VIII.  *See, e.g.*, Ex. 8 at JIVIBAYER1138965; Ex. 21 at JIVIBAYER0714264; Ex. 12 at BAYER0010186.

Just as he did with the Bossard inventions, Dr. Harris collaborated with Dr. Bentley to patent the branched PEG concepts he had worked on with Dr. Tomic.  Indeed, Drs. Harris and Bentley are co-inventors on the '237 patent filed in 1998 that depicts a branched PEG ████████

████████████████████████████████████[14]  Harris Tr.  151:22-152:4, 174:12-175:14. However, no one could explain why Dr. Harris is not a named inventor on the Bentley patents despite this fact.  The simple answer, supported by the direct and circumstantial evidence, is that Dr. Harris should have been named.  And, because Dr. Harris developed the branched PEG2NHS concept in conjunction with Dr. Tomic, the latter should also be added as a co-inventor.

Similarly, none of the named inventors who were deposed claimed credit or credited each other for conceiving the list of biological agents in the Bentley patents' specification for pegylation, nor could they say how Factor VIII was included in that list and eventual '569 patent claim 12.  *See* Bentley Tr. 71:9-72:5, 73:7-18; Shen Tr. 123:19-124:5; Battle Tr. 42:16-43:7.  Again, the evidence points to Drs. Tomic and Harris, the former having led efforts to reduce to practice PEG2NHS-Factor VIII conjugates at Bayer, as the originators of these inventions.  Drs. Tomic and Harris should accordingly also be added as co-inventors of the Bentley patents.

---

[14]     The Bentley patents' specification also shows that the named inventors discussed the same PEG2NHS and its variants ('072 Patent 1:55-62) that Dr. Harris discussed with Dr. Bentley ('237 Patent 7:32-43), all after Dr. Tomic first discussed that same PEG and its variants with Dr. Harris (*supra* p.6).

### C.   Correction Is Warranted and this Case Should Be Dismissed

The evidence of record proves that Drs. Tomic and Harris contributed substantially to the conception of the Bossard and Bentley patents, and their efforts should be recognized.  Bayer will serve this motion upon the currently-named inventors or their counsel and respectfully requests that the Court set a hearing so that the interested parties may be heard.

If the Court decides that Drs. Tomic and Harris should be joined as inventors, it should order the PTO to correct the Bossard and Bentley patents to add them as co-inventors and then dismiss this litigation because Nektar and Baxalta will lack standing following correction. Bayer is a joint owner by assignment of Dr. Tomic's interest in all asserted patents (Ex. 1) and neither Bayer nor Dr. Harris (or his rightful assignee) is a named plaintiff.  Absent that, and once inventorship is corrected, Nektar and Baxalta will lack standing to maintain the suit and this Court should dismiss for that reason.  *See Ethicon, Inc.*, 135 F.3d at 1459, 1468.

## VI.   CONCLUSION

For the reasons above, Bayer respectfully requests that the Court set a hearing pursuant to 35 U.S.C. § 256, order correction of inventorship, and dismiss because Nektar and Baxalta lack standing under the correct inventorship.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Rodger D. Smith II*

Rodger D. Smith II (#3778)
Michael J. Flynn (#5333)
Jennifer A. Ward (#6476)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
rsmith@mnat.com
mflynn@mnat.com
jward@mnat.com

*Attorneys for Defendant Bayer HealthCare
LLC*

OF COUNSEL:

Bradford J. Badke
Sona De
Ching-Lee Fukuda
Julie L. Hsia
Timothy Q. Li
SIDLEY AUSTIN  LLP
787 Seventh Avenue
New York, NY  10019
(212) 839-5300

Sue Wang
Saurabh Prabhakar
SIDLEY AUSTIN LLP
555 California Street, Suite 2000
San Francisco, CA  94104
(415) 772-1200

Paul J. Zegger
Lauren Cranford Katzeff
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, DC  20005
(202) 736-8711

June 30, 2020

## Appendix I

Contributions from Drs. Milan Tomic and Milton Harris in **bold**.

| Claim # | Bossard U.S. Patent No. 7,199,223 |
|---|---|
| 1 | A **conjugate** comprising **one, two or three water-soluble polymers** covalently attached to a **Factor VIII moiety,** |
| | wherein each water-soluble polymer has a nominal average molecular weight in the range of **from 6,000 Daltons to 150,000 Daltons** |
| | and further wherein the conjugate is a **1-mer, 2-mer, or 3-mer**. |
| **Claim #** | **Bossard U.S. Patent No. 7,863,421** |
| 1 | A **conjugate** comprising a water-soluble polymer covalently attached to a **Factor VIII polypeptide** |
| | via a **thiol group of a cysteine residue** contained within the Factor VIII polypeptide, |
| | wherein the Factor VIII polypeptide is selected from the group consisting of **Factor VIII**, Factor VIIIa, Factor VIII:C, Factor VIII:vWF and B-domain deleted Factor VIII, |
| | and wherein the water-soluble polymer is selected from the group consisting of **poly(alkylene glycol)**, poly(vinyl pyrrolidone), poly(vinyl alcohol), polyoxazoline, and poly(N-acryloylmorpholine) |
| 4 | The conjugate of claim 1 or claim 2, wherein the water-soluble polymer is a **poly(ethylene glycol)** and the conjugate is **monoPEGylated**. |
| 5 | The conjugate of claim 1 or claim 3, wherein the water-soluble polymer has a nominal average molecular weight in the range of **from about 6,000 Daltons to about 90,000 Daltons.** |
| **Claim #** | **Bossard U.S. Patent No. 8,247,536** |
| 1 | A composition that is free from albumin comprising: **a conjugate that comprises one, two or three water-soluble polymers** |
| | selected from the group consisting of a **poly(alkylene glycol)**, a poly(oxyethylated polyol), a poly(olefinic alcohol), a poly(vinylpyrrolidone), a poly(hydroxyalkylmethacrylamide), a poly(hydroxyalkylmethacrylate), a poly(saccharide), a poly($\alpha$-hydroxy acid), a poly(vinyl alcohol), a polyphosphazene, a polyoxazoline, a poly(N-acryloylmorpholine), and combinations thereof, |
| | covalently attached to a **Factor VIII polypeptide** |
| | selected from the group consisting of **Factor VIII**, Factor VIIIa, Factor VIII:C, Factor VIII:vWF, and B-domain deleted Factor VIII. |
| 9 | The composition of claim 1, wherein the one, two, or three water-soluble polymers are covalently attached to **thiol groups** within the Factor VIII polypeptide. |

| 11 | The composition of claim 1, wherein the water-soluble polymer has a nominal average molecular weight in a range of **from about greater than 5,000 Daltons to about 150,000 Daltons**. |
|---|---|
| **Claim #** | **Bossard U.S. Patent No. 8,519,102** |
| 1 | A **conjugate** comprising a water-soluble polymer covalently attached to a **Factor VIII polypeptide** |
|  | via a thiol group of a cysteine residue that has been added to or substituted in the Factor VIII polypeptide |
|  | wherein the **conjugate comprises an in-vitro activity that is at least 15% of the in-vitro activity of the unconjugated Factor VIII polypeptide** |
|  | and wherein the water-soluble polymer is selected from the group consisting of a **poly(alkylene glycol)**, a poly(oxyethylated polyol), a poly(olefinic alcohol), a poly(vinylpyrrolidone), a poly(hydroxyalkylmethacrylamide), a poly(hydroxyalkylmethacrylate), a poly(saccharide), a poly(α-hydroxy acid), a poly(vinyl alcohol), a polyphosphazene, a polyoxazoline, a poly(N-acryloylmorpholine), and combinations thereof. |
| 9 | The conjugate of claim 1, wherein the water-soluble polymer is a **poly(ethylene glycol)**. |
| 10 | The conjugate of claim 1 or claim 5, wherein the conjugate is **monoPEGylated.** |
| 11 | The conjugate of claim 9, wherein the poly(ethylene glycol) has a nominal average molecular weight in the range of **greater than 5,000 Daltons to about 150,000 Daltons.** |
| **Claim #** | **Bossard U.S. Patent No. 8,618,259** |
| 1 | A composition that is at least 85% free from albumin, the composition comprising a **conjugate** comprising a water-soluble polymer covalently attached to a **Factor VIII polypeptide** |
|  | via a thiol group of a cysteine residue that has been added to or substituted in the Factor VIII polypeptide |
|  | wherein the water-soluble polymer is selected from the group consisting of a **poly(alkylene glycol)**, a poly(oxyethylated polyol), a poly(olefinic alcohol), a poly(vinylpyrrolidone), a poly(hydroxyalkylmethacrylamide), a poly(hydroxyalkylmethacrylate), a poly(saccharide), a poly(α-hydroxy acid), a poly(vinyl alcohol), a polyphosphazene, a polyoxazoline, a poly(N-acryloylmorpholine), and combinations thereof. |
| 10 | The composition of claim 1, wherein the water-soluble polymer is a **poly(ethylene glycol)**. |
| 11 | The composition of claim 10, wherein the conjugate is **monoPEGylated.** |

| 12 | The composition of claim 10, wherein the poly(ethylene glycol) has a nominal average molecular weight in the range of **greater than 5,000 Daltons to about 150,000 Daltons.** |
|---|---|
| **Claim #** | **Bossard U.S. Patent No. 8,889,831** |
| 1 | A unit dose of a pharmaceutical composition, the pharmaceutical composition comprising: (i) **a conjugate comprising one, two or three water-soluble polymers,** each covalently attached to a **Factor VIII polypeptide** |
|  | via a thiol group of a cysteine residue that has been added to or substituted in the Factor VIII polypeptide, and |
|  | (ii) a pharmaceutically acceptable excipient, |
|  | wherein the factor VIII polypeptide is present in the unit dose in an amount ranging from 0.001 mg to 100 mg, |
|  | and further wherein the one, two or three water soluble polymers are selected from the group consisting of **poly(alkylene glycol)**, poly(oxyethylated polyol), poly(olefinic alcohol), a poly(vinylpyrrolidone), poly(hydroxyalkylmethacrylamide), poly(hydroxyalkylmethacrylate), poly(saccharide), poly($\alpha$-hydroxy acid), poly(vinyl alcohol), polyphosphazene, polyoxazoline, poly(N-acryloylmorpholine), and combinations of any of the foregoing. |
| 14 | The unit dose of claim 1, wherein the one, two or three water-soluble polymers are **poly(alkylene glycol)**. |
| 15 | The unit dose of claim 14, wherein the **one, two or three water-soluble polymers are poly(ethylene glycol).** |
| 26 | The unit dose of claim 15, wherein each poly(ethylene glycol) has a nominal average molecular weight in the range of **greater than 5,000 Daltons to about 150,000 Daltons.** |
| **Claim #** | **Bossard U.S. Patent No. 9,999,657** |
| 1 | A **monoPEGylated Factor VIII conjugate** comprising a **single poly(ethylene glycol) polymer** covalently **attached to a cysteine residue** of a B-domain deleted Factor VIII polypeptide, |
|  | wherein the single poly(ethylene glycol) polymer is **branched** and has a nominal average molecular weight in a range of **about 20,000 daltons to about 85,000 daltons.** |
| **Claim #** | **Bentley U.S. Patent No. 7,872,072** |
| 1 | A **biologically active conjugate** comprising **a branched polymer covalently attached to a biologically active molecule**, wherein the conjugate has the structure: **D-L1-(X)p-R(--O-POLY)q** wherein: |
|  | D is the biologically active molecule; |
|  | L1 is a linkage resulting from the reaction of a functional group on the linker (X), |

3

|  | when present, or on the aliphatic hydrocarbon having a length of at least three carbon atoms (R) of the branched polymer and a functional group of the biologically active molecule;<br><br>R is an aliphatic hydrocarbon having a length of at least three carbon atoms;<br><br>each POLY is a water soluble and non-peptidic polymer that terminates with a hydroxyl or methoxy group;<br><br>X is a linker of 1 to 10 atoms in length;<br><br>p is 0 or 1; and<br><br>q is 2 to about 10,<br><br>and further wherein **the branched polymer has a molecular weight of about 12,000 Da to about 100,000 Da.** |
|---|---|
| **Claim #** | **Bentley U.S. Patent No. 8,273,833** |
| 1 | **A branched reactive polymer** having the structure: **Y--(X)p-R(--X-POLY)q** wherein:<br><br>Y is a functional group reactive with an electrophilic or nucleophilic group;<br><br>R is an aliphatic hydrocarbon having a length of at least three carbon atoms;<br><br>X' is --O--;<br><br>X is a linker of 1 to 10 atoms in length;<br><br>P is 0 or 1;<br><br>q is 2 to about 10; and<br><br>each POLY is a water soluble and non-peptidic polyethylene glycol (PEG) polymer that terminates with a hydroxyl or methoxy group,<br><br>and further wherein the **branched polymer has a molecular weight of about 12,000 Da to about 100,000 Da.** |
| **Claim #** | **Bentley U.S. Patent No. 8,809,453** |
| 1 | **A biologically active conjugate** comprising **a branched polymer covalently attached to a biologically active molecule**, wherein the conjugate has the structure: **D-L1-(X)p--R--(X'-POLY)q** wherein:<br><br>D is the biologically active molecule;<br><br>R is an aliphatic hydrocarbon having a length of at least three carbon atoms; |

4

| | |
|---|---|
| | L1 is a linkage resulting from the reaction of a functional group on the linker (X), when present, or on the aliphatic hydrocarbon having a length of at least three carbon atoms (R) of the branched polymer and a functional group of the biologically active molecule;<br><br>each POLY is a water soluble and non-peptidic polymer that terminates with a hydroxyl or methoxy group;<br><br>X' is --O--, --NH--, or --S--;<br><br>X is a linker of 1 to 10 atoms in length;<br><br>p is 0 or 1; and<br><br>q is 2, |
| | and further wherein the **branched polymer has a molecular weight of about 12,000 Da to about 100,000 Da.** |
| **Claim #** | **Bentley U.S. Patent No. 9,187,569** |
| 1 | **A branched reactive polymer having the structure: Y--(X)p-R(--X'-POLY)q** wherein:<br><br>R is an aliphatic hydrocarbon having a length of at least three carbon atoms;<br><br>each POLY is a poly(ethylene glycol) that terminates with a hydroxyl or methoxy group;<br><br>X' is a heteroatom linkage selected from --NH--, --O-- or --S--;<br><br>X is a linker of 1 to ten atoms;<br><br>p is 0 or 1;<br><br>q is 2 to about 10; and<br><br>**Y is a maleimide,**<br><br>and further wherein the branched reactive polymer has a **molecular weight of about 500 Da to about 100,000 Da**. |
| 10 | A biologically active conjugate, comprising **a biologically active molecule** covalently attached to a **branched reactive polymer of claim 1**, wherein the biologically active molecule is a biologically active protein. |
| 12 | The biologically active conjugate of claim 10, wherein **the biologically active protein is a biologically active fragment of Factor VIII.** |