IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

BAXALTA INCORPORATED, BAXALTA US INC. and NEKTAR THERAPEUTICS,

Plaintiffs and Counterclaim Defendants,

v.

BAYER HEALTHCARE LLC,

Defendant and Counterclaim Plaintiff.

C.A. No. 17-1316 (RGA) (SRF)
CONSOLIDATED

**PUBLIC VERSION**

**BAYER HEALTHCARE LLC'S ANSWERING BRIEF IN OPPOSITION TO PLAINTIFFS' MOTION TO STRIKE BAYER HEALTHCARE LLC'S MOTION TO CORRECT INVENTORSHIP PURSUANT TO 35 U.S.C. § 256 AND TO DISMISS PURSUANT TO FED. R. CIV. P. 12(B)(1)**


MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Rodger D. Smith II (#3778)
Michael J. Flynn (#5333)
Jennifer A. Ward (#6476)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
rsmith@mnat.com
mflynn@mnat.com
jward@mnat.com

*Attorneys for Defendant Bayer HealthCare LLC*

OF COUNSEL:

Bradford J. Badke
Sona De
Ching-Lee Fukuda
Julie L. Hsia
Timothy Q. Li
SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, NY 10019
(212) 839-5300

Sue Wang
Saurabh Prabhakar
SIDLEY AUSTIN LLP
555 California Street, Suite 2000
San Francisco, CA 94104
(415) 772-1200

Paul J. Zegger
Lauren Cranford Katzeff
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, DC 20005
(202) 736-8711



**Confidential Version Filed: July 16, 2020**
**Public Version Filed: July 23, 2020**

**TABLE OF CONTENTS**

I. INTRODUCTION ... 1

II. NATURE AND STAGE OF PROCEEDINGS ... 2

III. ARGUMENT ... 3

A. Bayer's Motion Properly Challenged Standing and Subject Matter Jurisdiction Under Rule 12(b)(1) ... 3

B. Bayer's Motion Does Not Violate the Scheduling Order ... 7

C. Bayer's Pleadings Raise Inventorship and Standing Issues ... 8

D. There Is No Prejudice to Plaintiffs ... 9

IV. CONCLUSION ... 12

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Acceleration Bay LLC v. Activision Blizzard, Inc.*,
C.A. No. 16-453-RGA, 2017 WL 3668597 (D. Del. Aug. 24, 2017)........................................5

*CODA Dev. S.R.O. v. Goodyear Tire & Rubber Co.*
916 F.3d 1350 (Fed. Cir. 2019)........................................................................................8

*Drone Techs., Inc. v. Parrot S.A.*,
838 F.3d 1283 (Fed. Cir. 2016)........................................................................................5

*Ethicon, Inc. v. U.S. Surgical Corp.*,
135 F.3d 1456 (Fed. Cir. 1998)........................................................................................5

*Ethicon, Inc. v. U.S. Surgical Corp.*,
921 F. Supp. 901 (D. Conn. 1995)...................................................................................10

*Ethicon, Inc. v. U.S. Surgical Corp.*,
937 F. Supp. 1015 (D. Conn. 1996)..................................................................................11

*Exxon Chem. Patents Inc. v. Lubrizol Corp.*,
935 F.2d 1263 (Fed. Cir. 1991)........................................................................................7

*Hydril Co. v. Baker Hughes Inc.*,
121 F.3d 728, 1997 WL 469722 (Fed. Cir. 1997) .............................................................9

*ICU Med., Inc. v. RyMed Techs., Inc.*,
674 F. Supp. 2d 574 (D. Del. 2009)...................................................................................9

*Lone Star Silicon Innovations LLC v. Nanya Tech. Corp.*,
925 F.3d 1225 (Fed. Cir. 2019)...............................................................................4, 6, 7

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992).......................................................................................................3, 4, 6

*Morrow v. Microsoft Corp.*,
499 F.3d 1332 (Fed. Cir. 2007)...................................................................................4, 6

*Pannu v. Iolab Corp.*,
155 F.3d 1344 (Fed. Cir. 1998)........................................................................................10

*STC.UNM v. Intel Corp.*,
754 F.3d 940 (Fed. Cir. 2014)..........................................................................................5

*StoneEagle Servs., Inc. v. Gillman*,
746 F.3d 1059 (Fed. Cir. 2014)....................................................................................7

**Statutes**

35 U.S.C. § 256.................................................................................................... *passim*

35 U.S.C. § 256(b) ....................................................................................................3

35 U.S.C. § 262.........................................................................................................5

35 U.S.C. § 281.........................................................................................................6

U.S. Const. Art. IIII ........................................................................................3, 6, 7

## I. INTRODUCTION

In an attempt to avoid the ramifications of Defendant Bayer HealthCare LLC's Motion to Correct Inventorship and Dismiss under Fed. R. Civ. P. 12(b)(1) (D.I. 483) (hereinafter "Bayer's motion"), Plaintiffs move to strike Bayer's motion as improper under Rule 12(b)(1) or untimely under the Scheduling Order. In so doing, Plaintiffs mischaracterize both Bayer's submissions and the law.

There is no time limit to challenge lack of standing and, consequently, this Court's subject matter jurisdiction under Rule 12(b)(1). Admitting as much, Plaintiffs dispute whether Bayer's motion properly invoked Rule 12(b)(1). It did. As Bayer's motion explains, Bayer scientist Milan Tomic is an unnamed inventor of the asserted patents, and Dr. Tomic's rights have been assigned to Bayer. As a result, Bayer is a co-owner of these patents. Accordingly, Plaintiffs have no standing to sue Bayer, let alone any third-party without Bayer.

The Federal Circuit has recognized that a motion to correct inventorship and consequent dismissal for lack of subject matter jurisdiction is the proper procedural course where, as here, Bayer is both an omitted co-owner of patent rights and a defendant. Rather than moving to correct inventorship first, and waiting until after an evidentiary hearing and decision correcting inventorship to move for lack of standing and subject matter jurisdiction as it could have done, Bayer included both in its motion. Plaintiffs' suggestion that Bayer's Rule 12(b)(1) motion is time-barred because it was filed sooner rather than later is illogical and contrary to law.

Plaintiffs incorrectly assert that lack of standing is irrelevant to this Court's subject matter jurisdiction here. To the contrary, the Supreme Court has stated that for a dispute to be within the subject-matter jurisdiction of a federal court, a plaintiff must have standing and bears the burden to establish standing at each stage of the litigation. That is why the Federal

Rules permit motions challenging standing to be made at any time. Plaintiffs admit that the Scheduling Order does not foreclose Rule 12 motions as untimely; nor can it given this authority.

In reality, Plaintiffs' problem with Bayer's motion has little or nothing to do with timing because they have not and cannot identify any prejudice. Bayer's prior inventorship is not a new theory in this case. Plaintiffs have been well aware of this issue at least since Bayer's original answer and counterclaims, which include counterclaims of incorrect inventorship and lack of standing. Indeed, Plaintiffs filed a Rule 12(b)(6) motion to dismiss Bayer's inequitable conduct counterclaims, which are largely based on the same underlying core facts, as are Bayer's derivation and prior invention defenses on which Plaintiffs have moved for summary judgment. And it was Plaintiffs' summary judgment motion that required Bayer to marshal the massive amount of evidence on this topic in response to that motion. The inescapable conclusion is that the factual and legal standards for correction of inventorship and dismissal are also met and are ripe for evidentiary hearing and decision, which resulted in Bayer's motion.

Plaintiffs' unstated concern is that they know Bayer is right on inventorship. And the present motion is yet another procedural attempt—like their Rule 12(b)(6) motion on the inequitable conduct claims and summary judgment motion against other claims arising from the same facts—to thwart full and timely review of the issue on the merits. For the reasons set forth herein, Plaintiffs' motion to strike Bayer's inventorship motion should be denied.

## II. NATURE AND STAGE OF PROCEEDINGS

In September 2017 and August 2018, Plaintiffs filed complaints asserting the Bossard and Bentley patents respectively. Bayer's Amended Answer includes Affirmative Defenses and corresponding Counterclaims directed to "[i]ncorrect [i]nventorship" and "[l]ack of [s]tanding." D.I. 333 at 25-26, D.I. 381 at 14-15. Facts and evidence related to inventorship are also addressed in Bayer's inequitable conduct counterclaims filed on October 11, 2019. D.I. 333

at CC ¶¶ 75, 86, 91; D.I. 381 at CC ¶¶ 79, 93, 98. Plaintiffs moved for summary judgment concerning Bayer's derivation and prior invention defenses, briefing on which was completed on June 19, 2020. *See* D.I. 445, 447-54, 462-71. On June 30, 2020, Bayer moved for (i) an evidentiary hearing and order pursuant to 35 U.S.C. § 256(b) directing the Patent Office ("PTO") to issue a certificate correcting inventorship of the asserted patents to add Dr. Tomic and former Nektar scientist Dr. Milton Harris as inventors, and (ii) dismissal of this suit under Rule 12(b)(1) because Plaintiffs lack standing to sue Bayer under the correct inventorship. D.I. 483. Trial is set for September 21, 2020. D.I. 446.

## III. ARGUMENT

### A. Bayer's Motion Properly Challenged Standing and Subject Matter Jurisdiction Under Rule 12(b)(1)

Plaintiffs admit that there is no deadline for filing Rule 12(b)(1) motions challenging subject matter jurisdiction. *See* D.I. 490 at 2-3. Indeed, the Federal Rules permit such motions to be made at any time. *See* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."); Fed. R. Civ. P. 12(i) (any defense under Rule 12(b)(1)-(7) "must be heard and decided before trial unless the court orders a deferral until trial").

Standing is a constitutional requirement under Article III and is a threshold jurisdictional issue. For a federal court to have "subject-matter jurisdiction" to decide a case under Article III, a plaintiff must have the "constitutional minimum of standing" and bears the burden to establish standing at each stage of litigation to invoke "federal jurisdiction." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61, 569 n.4 (1992). Under *Lujan*, Plaintiffs must (1) suffer an "injury in fact," (2) there must be a causal connection between that injury and conduct traceable to the defendant, and (3) it must be likely that the injury will be redressed by a

favorable decision. *Id*. at 560-61; *see also Lone Star Silicon Innovations LLC v. Nanya Tech. Corp.*, 925 F.3d 1225, 1234 (Fed. Cir. 2019) (citing *Lujan*). Failure as to any one of these requirements negates Article III subject matter jurisdiction.

The Federal Circuit has repeatedly recognized these constitutional requirements must be met in patent cases. "Constitutional injury in fact occurs when a party performs at least one prohibited action with respect to the patented invention that violates the[] exclusionary rights" granted in the Patent Act, causing "[t]he party holding the exclusionary rights to … suffer[] legal injury in fact under the statute." *Morrow v. Microsoft Corp.*, 499 F.3d 1332, 1339 (Fed. Cir. 2007) (reversing finding of constitutional standing because injury requirement was unmet). Those "who possess 'exclusionary rights' in a patent suffer an injury when their rights are infringed," *Lone Star*, 925 F.3d at 1234, whereas those who "lack exclusionary rights" also "lack constitutional standing," *Morrow*, 499 F.3d at 1340-41.

As a matter of law and logic, none of these constitutional requirements is met where one patent co-owner purports to sue another, as is the case here. There is no injury to Plaintiffs, or causal connection to conduct traceable to Bayer, because each co-owner (including Bayer) has the substantive right to practice the patent without the consent of the other co-owners. Nor is there any possibility of a favorable decision against Bayer for the same reason. In short, Plaintiffs cannot identify any "exclusionary right" they hold that Bayer is violating in order to establish legal injury-in-fact under Article III, *because Bayer is a co-owner and cannot be "excluded" by Plaintiffs from conduct that Bayer has the legal right to practice*. Plaintiffs do not address any of the requirements for constitutional standing under *Lujan*.

Plaintiffs nevertheless argue that dismissal under Rule 12(b)(1) should not apply to Bayer's motion. D.I. 490 at 2-3. But dismissal is exactly what the Federal Circuit has

indicated is the proper outcome in inventorship cases that vest the defendant with rights in the asserted patent such as this. For example, in the landmark case not addressed in Plaintiffs' motion, *Ethicon, Inc. v. U.S. Surgical Corp.*, 135 F.3d 1456, 1462, 1464-65, 1468 (Fed. Cir. 1998), the defendant moved to correct inventorship by adding an unnamed co-inventor to the asserted patent, where the co-inventor had exclusively licensed his patent rights to the defendant. The district court held an evidentiary hearing, finding that the unnamed co-inventor should have been named on the patent, and then dismissed the case because the defendant was an exclusive licensee and did not consent to the suit. *Id.* at 1462, 1464-65, 1468. The Federal Circuit affirmed, explaining that "as a matter of substantive patent law, all co-owners must ordinarily consent to join as plaintiffs in an infringement suit," and "one co-owner has the right to impede the other co-owner's ability to sue infringers by refusing to voluntarily join in such a suit." *Id.* at 1468 (citation omitted). Dismissal was warranted because the omitted co-owner was a necessary party and had licensed the defendant. *Id.* at 1468 (citing 35 U.S.C. § 262). And that effectively erased the plaintiff's ability to contend that the licensed defendant was violating the plaintiff's exclusionary rights.

The Federal Circuit has since held that "[s]tanding is a jurisdictional issue" and that inventorship correction under § 256 should precede dismissal for lack of standing. *Drone Techs., Inc. v. Parrot S.A.*, 838 F.3d 1283, 1292 (Fed. Cir. 2016). The Federal Circuit has also affirmed dismissal where an omitted patent co-owner did not voluntarily join the suit, holding that a plaintiff lacks standing to maintain suit under such circumstances. *See STC.UNM v. Intel Corp.*, 754 F.3d 940, 946 (Fed. Cir. 2014). This Court has applied the same approach. *See Acceleration Bay LLC v. Activision Blizzard, Inc.*, C.A. No. 16-453-RGA, 2017 WL 3668597, at *3-4 (D. Del. Aug. 24, 2017) (dismissing suit for "[l]ack of [s]tanding" and therefore lack of

"subject-matter jurisdiction" because defendants had ability to obtain a license, which meant that plaintiffs could not show right to exclude defendants from engaging in allegedly infringing activity). The same is true here. Because Bayer is both the omitted co-owner and defendant, no joinder is possible. *See* D.I. 484 at 1, 20. Bayer's request for an evidentiary hearing and dismissal under Rule 12(b)(1) after correction of inventorship properly tracks the Federal Circuit's approach for such cases.

Plaintiffs rely on *Schwendimann* and *Lone Star* to incorrectly suggest that lack of standing is irrelevant to this Court's subject matter jurisdiction here. *See* D.I. 490 at 2-3. The plaintiff in each of those cases had acquired the asserted patents from third-parties, and one issue that arose as a result was whether the named plaintiff in each suit had obtained sufficient rights to qualify as a "patentee" under 35 U.S.C. § 281 and sue on its own. That is "statutory standing" under the Patent Act. Plaintiffs conflate the statutory standing requirement of § 281—which establishes when a party may obtain relief under the patent laws—with the independent requirements of Article III—which establish when a plaintiff may invoke federal judicial power. Both *Schwendimann* and *Lone Star* underscore that constitutional standing is a separate *and additional* requirement under federal subject matter jurisdiction. *See, e.g.*, *Lone Star*, 925 F.3d at 1234-36 (relying on *Lujan* and *Morrow* before holding that plaintiff had constitutional standing, but remanding to assess feasibility of joining third-party patentee to cure lack of statutory standing).[1] Bayer's motion implicates Plaintiff's inability to establish legal injury to its

[1] *Lone Star* explained that statutory standing, not constitutional standing, is subject to Rule 12(b)(6) (which motions are not time-barred either) and does not implicate subject matter jurisdiction. 925 F.3d at 1235. Moreover, Plaintiffs argue that the Court should construe Bayer's motion based on the substance of the relief sought. D.I. 490 at 3. The substance of the relief sought here is dismissal for lack of subject matter jurisdiction properly brought under Rule 12(b)(1) given lack of constitutional standing. Even if the Court were to conclude that Article III standing is somehow satisfied and that Bayer's argument implicates statutory standing

exclusionary rights against a co-owner—an issue that is fatal to constitutional standing and Article III jurisdiction.[2]

With no other recourse, Plaintiffs suggest that Bayer's motion referenced Rule 12(b)(1) only in its title. *See* D.I. 490 at 3. That too is incorrect. Bayer explained that it sought dismissal of this suit for lack of standing under the correct inventorship throughout its brief, including in its Introduction, Legal Standards, Argument, and Conclusion. *See* D.I. 484 at 1-2, 13, 20. In accordance with the Federal Circuit's approach, Bayer also sought corrected inventorship in its motion. D.I. 484 at 1, 20. Plaintiffs' suggestion that Bayer's Rule 12(b)(1) motion is time-barred because it was filed concurrently with its motion to correct under 35 U.S.C. § 256 is illogical and contrary to law.

**B. Bayer's Motion Does Not Violate the Scheduling Order**

Because this is a Rule 12(b)(1) motion for the reasons discussed *supra* at § III.A, Bayer's motion is not time-barred by the Court's Scheduling Order. Plaintiffs admit that a Rule 12(b)(1) motion "can arguably be filed at any time" as opposed to a dispositive motion that is subject to the deadline in the Scheduling Order. *See* D.I. 490 at 1-2; *see also id.* at 3 (a jurisdictional motion "can be filed at any time").

Equally wrong is Plaintiffs' suggestion that Bayer's motion should be stricken in light of the Scheduling Order's 40-page limit for dispositive motions on the theory that it is not a

---

only, both *Lone Star* and *Schwendimann* proceeded to consider the merits of standing, and this Court should too.

[2] Further revealing Plaintiffs' confusion, the motion to strike states that "questions of patent law, such as inventorship under § 256 as raised in Bayer's Motion, also do not implicate jurisdiction." D.I. 490 at 2 (quoting *Exxon Chem. Patents Inc. v. Lubrizol Corp.*, 935 F.2d 1263, 1265-66 (Fed. Cir. 1991)) ("When a challenge to jurisdiction is in fact directed only to the merits of a question of patent law, it is proper for the district court to accept jurisdiction under § 1338(a)."). But § 1338 is about federal-question jurisdiction, and "even where a federal question is raised, the federal courts' jurisdiction is still limited by the 'Cases' or 'Controversies' requirement of Article III of the Constitution." *StoneEagle Servs., Inc. v. Gillman*, 746 F.3d 1059, 1063 (Fed. Cir. 2014).

Rule 12(b)(1) motion. *See* D.I. 490 at 3. This page limit set by the Court refers only to the parties' summary judgment and *Daubert* motions. D.I. 445 at 2. Bayer does not seek summary judgment, but correction of inventorship and dismissal following an evidentiary hearing. D.I. 484 at 1. Even under Plaintiffs' flawed logic that Bayer's motion is not properly a Rule 12(b)(1) motion but only a motion for hearing on inventorship, that would mean Bayer's motion would not be a dispositive motion subject to either the May 29, 2020 deadline or the 40-page limit.

### C. Bayer's Pleadings Raise Inventorship and Standing Issues

Plaintiffs' argument that Bayer did not plead incorrect inventorship or seek relief for it (D.I. 491) is incorrect. Plaintiffs clip-quote Bayer's Fourth Affirmative Defense and corresponding Counterclaim[3] to conveniently omit language in that very allegation in which Bayer expressly pled "[i]ncorrect [i]nventorship" for both the Bossard and Bentley patents in addition to "[d]erivation" and "[p]rior [i]nvention." *Compare* D.I. 490 at 5 *with* D.I. 333 at 25-26, D.I. 381 at 14-15. Moreover, Plaintiffs wholly ignore Bayer's Sixth Affirmative Defense and Counterclaim directed to Plaintiffs' "[l]ack of [s]tanding," which is the consequence of correcting inventorship. *See* D.I. 333 at 25-26; D.I. 381 at 14-15. Furthermore, Bayer's Prayer for Relief covers "[a]ny other relief that the Court may deem just and proper." *See* D.I. 333 at 89 (par. I.); D.I. 381 at 80 (same). Correction under 35 U.S.C. § 256 is one such relief for incorrect inventorship that the Court may order.

Nothing more is required to plead incorrect inventorship or seek correction under 35 U.S.C. § 256. Plaintiffs cite no authority where a § 256 motion was denied because the phrase "35 U.S.C. § 256" was not expressly stated in the pleadings. Plaintiffs' cited case, *CODA*

---

[3] Bayer's pleading explains that any defenses that are appropriately deemed counterclaims shall be treated as such. D.I. 333 at 25; D.I. 381 at 14.

*Dev. S.R.O. v. Goodyear Tire & Rubber Co.*, recognized that § 256 "provides a cause of action" to correct inventorship, but nowhere does the decision support Plaintiffs' argument that § 256 "must be expressly pleaded to seek such relief." *See* 916 F.3d 1350, 1358 (Fed. Cir. 2019) (citation omitted); D.I. 490 at 4. Contrary to Plaintiffs' assertion (D.I. 490 at 5-6), having adequately pled incorrect inventorship, Bayer has not "waived" its rights under 35 U.S.C. § 256. *See Hydril Co. v. Baker Hughes Inc.*, 121 F.3d 728, 1997 WL 469722, at *5 (Fed. Cir. 1997) (table decision) (reversing grant of summary judgment and explaining that plaintiff did not waive right to correct inventorship even though it had not pled 35 U.S.C. § 256, and the district court "had the power to correct inventorship" on remand).

Even if there was some need to amend Bayer's pleadings to conform to the discovery in the case, the Federal Rules allow parties to conform pleadings to the discovery even through trial. *See* Fed. R. Civ. P. 15(b)(2) (stating "[a] party may move—at any time, even after judgment—to amend the pleadings to conform them to the evidence . . ."). Amending a pleading after a pleading deadline has passed is also permitted upon a showing of good cause. *See ICU Med., Inc. v. RyMed Techs., Inc.*, 674 F. Supp. 2d 574, 577-78 (D. Del. 2009). The issue of inventorship has been well known to Plaintiffs for a very long time, and § 256 is an alternate form of relief based on the same operative facts pled by Bayer. To the extent it is necessary—and it is not—Bayer should be permitted to amend its pleadings because Bayer has diligently alerted Plaintiffs to its intent to assert incorrect inventorship and lack of standing.

**D. There Is No Prejudice to Plaintiffs**

Bayer's Motion causes Plaintiffs no prejudice because Plaintiffs have been well aware of the inventorship problem with the asserted patents since the pleadings. *Supra* § III.C. Indeed, Plaintiffs have brought their own motions based on the same underlying core facts, which permeate (1) Plaintiffs' Rule 12(b)(6) motion to dismiss Bayer's inequitable conduct and

unclean hands defenses,[4] and (2) Plaintiffs' summary judgment motion on derivation and prior invention under §§ 102(f) and (g) respectively. The latter forced Bayer to engage in an extensive analysis of the massive amount of evidence on this topic in its opposition to Plaintiffs' motion for summary judgment. That analysis led to the inescapable conclusion that the legal standard for inventorship correction (which differs from these other defenses) has been met and is ripe for hearing.

Plaintiffs suggest that inventorship correction cannot be reconciled with inequitable conduct and Bayer's §§ 102(f) and (g) defenses (D.I. 490 at 6), but ignore that these are all potential conclusions that can be drawn from the facts at hand. And, as a defendant, Bayer can plead defenses in the alternative where appropriate. For instance, inventorship correction is one way to preserve an otherwise invalid patent under § 102(f). Consistent with this logic, in *Pannu v. Iolab Corp.*, the Federal Circuit explained that a patent with improper inventorship can be held invalid under § 102(f), ***or*** it can be corrected under § 256 to avoid invalidation under § 102(f). 155 F.3d 1344, 1351 (Fed. Cir. 1998). Similarly, in *Ethicon*,

---

[4] The Magistrate Judge recently issued a report and recommendation finding in effect that Bayer, in its Bentley and Bossard pleadings spanning 125 pages, had properly pled its inequitable conduct counterclaims with some minor exceptions. In particular, the Magistrate Judge found that although Bayer's inequitable conduct counterclaims name individuals with a duty of candor and adequately plead their intent to deceive, Bayer should specify which individual failed to disclose which prior art reference. D.I. 494 at 8-24. Bayer's objections to that report and recommendation are due on July 27, 2020, and Bayer will be seeking leave to amend its counterclaims if the Court deems it necessary. Bayer notes that its original amendment and counterclaims needed to be filed by the October 11, 2019 deadline, which it was. And despite Bayer's notice to take the depositions of the Bossard Patents named inventors (Mary Bossard), Bentley Patents named inventors (Xiaoming Shen and William Battle), and prosecuting attorneys (Mark Wilson and Christopher Humphrey) well in advance of that pleading deadline, Plaintiffs did not produce any of these witnesses for deposition until after that deadline. Another key witness, third-party Dr. Harris, was not deposed until after the deadline due to his family health issues. These witnesses are the same individuals for whom the Magistrate Judge sought more information in connection with the concealed material references that Bayer already pled, and now Bayer has those details as a result of subsequent depositions.

defendants presented alternative defenses of inequitable conduct and inventorship correction, and the district court granted defendants' request for a single evidentiary hearing to decide both issues in advance of a jury trial on any remaining claims and defenses. 921 F. Supp. 901, 902, 905 (D. Conn. 1995); *see also Ethicon, Inc. v. U.S. Surgical Corp.*, 937 F. Supp. 1015, 1018 (D. Conn. 1996). The same applies here. Bayer pled in its amended answer and counterclaims, filed on October 11, 2019 (prior to the close of fact discovery), that if the Examiner had been told of Bayer's contributions to the claimed inventions during prosecution of the asserted patents, the Examiner would have not allowed the claims to issue, "or would have required the Applicants to correct inventorship to add at least Milan Tomic as the inventor." D.I. 333 at CC ¶ 75; D.I. 381 at CC ¶ 79. Bayer similarly pled that Dr. Harris should have been named as a co-inventor and owed a duty of candor. D.I. 333 at CC ¶¶ 86, 91; D.I. 381 at CC ¶¶ 93, 98.[5] Thus, Bayer's pleading provided Plaintiffs with notice that Drs. Tomic and Harris could be added as named co-inventors.

Plaintiffs argue prejudice for having to file an answering brief in opposition to Bayer's Motion while preparing for the upcoming August pretrial conference (D.I. 490 at 7). Putting aside the notion that a team of thirteen lawyers cannot manage another brief, any supposed prejudice should have been alleviated by the parties' agreed-upon extension of time for filing their answering brief in opposition. And Plaintiffs should not be heard to complain about filing one additional brief when their own motion to strike is responsible for increasing the briefing burden and schedule as it is.

---

5 There is no factual inconsistency in Bayer's defenses. The factual record shows that the patented inventions were conceived by Dr. Tomic before the named inventors. That fact can support a conclusion that the patents were derived from him, or that both he and Dr. Harris are unnamed inventors.

Ultimately, Bayer's Motion would permit the Court to conserve judicial and party resources by holding an evidentiary hearing sooner rather than later. Should the Court find that correcting inventorship to add Drs. Tomic and/or Harris is proper, this suit should be dismissed under Rule 12(b)(1), thus eliminating the need for trial on additional defenses.

## IV. CONCLUSION

Bayer respectfully requests that the Court deny Plaintiffs' motion to strike Bayer's motion to correct inventorship pursuant to 35 U.S.C. § 256 and to dismiss pursuant to Fed. R. Civ. P. 12(b)(1).

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Rodger D. Smith II*

Rodger D. Smith II (#3778)
Michael J. Flynn (#5333)
Jennifer A. Ward (#6476)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
rsmith@mnat.com
mflynn@mnat.com
jward@mnat.com

*Attorneys for Defendant Bayer HealthCare LLC*

OF COUNSEL:

Bradford J. Badke
Sona De
Ching-Lee Fukuda
Julie L. Hsia
Timothy Q. Li
SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, NY 10019
(212) 839-5300

Sue Wang
Saurabh Prabhakar
SIDLEY AUSTIN LLP
555 California Street, Suite 2000
San Francisco, CA 94104
(415) 772-1200

Paul J. Zegger
Lauren Cranford Katzeff
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, DC 20005
(202) 736-8711

July 16, 2020