# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| BAXALTA INCORPORATED,<br>BAXALTA US INC., and<br>NEKTAR THERAPEUTICS,<br><br>    Plaintiffs and<br>    Counterclaim Defendants,<br><br>v.<br><br>BAYER HEALTHCARE LLC,<br><br>    Defendant and<br>    Counterclaim Plaintiff. | C.A. No. 17-1316-RGA-SRF<br>CONSOLIDATED<br><br>**REDACTED VERSION** |

## REPLY BRIEF IN SUPPORT OF PLAINTIFFS' MOTION TO STRIKE BAYER HEALTHCARE LLC'S MOTION TO CORRECT INVENTORSHIP PURSUANT TO 35 U.S.C. § 256 AND TO DISMISS PURSUANT TO RULE 12(B)(1)

*Of Counsel:*

Edgar H. Haug
Sandra Kuzmich
Richard F. Kurz
Erika V. Selli
Jason A. Kanter
Kaitlin Abrams
Haug Partners LLP
745 Fifth Avenue
New York, New York 10151
Tel: (212) 588-0800
ehaug@haugpartners.com
skuzmich@haugpartners.com
rkurz@haugpartners.com
eselli@haugpartners.com
jkanter@haugpartners.com
kabrams@haugpartners.com

Frederick L. Cottrell, III (#2555)
Kelly E. Farnan (#4395)
Nicole K. Pedi (#6236)
Richards, Layton & Finger, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Tel: (302) 651-7700
cottrell@rlf.com
farnan@rlf.com
pedi@rlf.com

*Attorneys for Plaintiffs
Baxalta Inc., Baxalta US Inc.,
and Nektar Therapeutics*

DATED: July 19, 2020

RLF1 23745000v.1

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................................ ii

I. Bayer Has a Heavy Burden to Prove Inventorship ............................................................. 1

II. Bayer Failed to Demonstrate that Its Motion Implicates Rule 12(b)(1) .............................. 2

      A. Bayer Cannot Distinguish *Lone Star* and *Schwendimann* ....................................... 2

      B. Bayer's New Arguments Do Not Deprive the Court of Jurisdiction ....................... 3

III. Bayer Did Not Plead a Cause of Action Under § 256 .......................................................... 6

      A. Bayer Admits that Its § 256 Claim Is New .............................................................. 6

      B. Bayer Failed to Identify a § 256 Claim Within Its Pleadings ................................. 7

IV. Bayer Makes No Attempt to Show Diligence to Amend the Case Schedule ...................... 9

V. Bayer Cannot Amend the Pleadings .................................................................................. 10

CONCLUSION ............................................................................................................................ 10

## TABLE OF AUTHORITIES

**Cases**

*Acceleration Bay LLC v. Activision Blizzard, Inc.*,
    No. 16-453-RGA, 2017 WL 3668597 (D. Del. Aug. 24, 2017) .......................................... 5

*Bayer HealthCare LLC v. Baxalta Inc.*,
    No. 16-1122-RGA, 2019 WL 291143 (D. Del. Jan. 22, 2019) ........................................... 9

*Drippe v. Tobelinski*,
    604 F.3d 778 (3d Cir. 2010) ................................................................................................ 10

*Drone Techs., Inc. v. Parrot S.A.*,
    838 F.3d 1283 (Fed. Cir. 2016) ............................................................................................ 4

*E.I. DuPont de Nemours and Co. v. Unifrax I LLC*,
    No. 14-1250-RGA, 2017 WL 1822279 (D. Del. May 5, 2017) .......................................... 9

*Eli Lilly & Co. v. Aradigm Corp.*,
    376 F.3d 1352 (Fed. Cir. 2004) ....................................................................................... 2, 8

*Ethicon, Inc. v. U.S. Surgical Corp.*,
    135 F.3d 1456 (Fed. Cir. 1998) ............................................................................................ 5

*Exxon Chem. Patents Inc. v. Lubrizol Corp.*,
    935 F.2d 1263 (Fed. Cir. 1991) ............................................................................................ 4

*Hydril Co. v. Baker Hughes Inc.*,
    No. 96-1288, 1997 WL 469722 (Fed. Cir. Aug. 19, 1997) ............................................ 8, 9

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
    572 U.S. 118 (2014) ............................................................................................................. 2

*Lone Star Silicon Innovations LLC v. Nanya Tech. Corp.*,
    925 F.3d 1225 (Fed. Cir. 2019) ......................................................................... 2, 3, 5, 6, 9

*Polyzen, Inc. v. RadiaDyne, LLC*, No. 14-323,
    2014 WL 7239889 (E.D.N.C. Dec. 18, 2014) .................................................................... 2

*Schwendimann v. Arkwright Adv. Coating Inc.*,
    959 F.3d 1065 (Fed. Cir. 2020) ............................................................................. 2, 3, 4, 5

*STC.UNM v. Intel Corp.*,
    745 F.3d 940 (Fed. Cir. 2014) .............................................................................................. 6

**Statutes**

35 U.S.C. § 256 ................................................................................................ 1, 2, 4, 6, 7, 8, 9, 10

35 U.S.C. § 271 ............................................................................................................................ 4

35 U.S.C. § 281 ........................................................................................................................ 3, 5

35 U.S.C. § 282(b)(4) ............................................................................................................... 7, 9

**Rules**

D. Del. LR 15.1 .......................................................................................................................... 10

Fed. R. Civ. P. 12(b)(1) ............................................................................................... 1, 2, 4, 5, 6, 7

Fed. R. Civ. P. 12(b)(7) ................................................................................................................ 5

Fed. R. Civ. P. 15(a) .................................................................................................................... 9

Fed. R. Civ. P. 15(b)(2) .............................................................................................................. 10

Fed. R. Civ. P. 16(b) .................................................................................................................... 9

Fed. R. Civ. P. 19 ......................................................................................................................... 5

Fed. R. Civ. P. 6(b) .................................................................................................................... 10

Fed. R. Civ. P. 6(b)(1)(B) .......................................................................................................... 10

Fed. R. Civ. P. 8(a)(3) .................................................................................................................. 7

Fed. R. Civ. P. 8(c) ...................................................................................................................... 7

Fed. R. Civ. P. 8(c)(1) .................................................................................................................. 5

RLF1 23745000v.1

Bayer's attempt to disguise its motion to change inventorship under 35 U.S.C. § 256 by couching it as a Rule 12(b)(1) standing issue (D.I. 484 ("Motion")) should be stricken. (D.I. 490.) Bayer tacitly admits that it first thought of this new theory while responding to Plaintiffs' summary judgment motion concerning Bayer's failures of proof for its § 102(f) (derivation) and § 102(g) (prior inventorship) invalidity claims, which both rely on Dr. Tomic as the alleged sole inventor. (D.I. 497 ("Response") at 10.) Bayer's Motion attempts to get another bite at the apple by asserting a new § 256 cause of action on the eve of trial, namely co-inventorship based on alleged collaboration between Drs. Tomic and Harris and the named inventors. But this cause of action: (i) does not implicate Rule 12(b)(1) under controlling law, (ii) was never pleaded, (iii) is based on a legal standard that Bayer admits "differs from these other defenses" (*id.*), and (iv) was untimely under the Scheduling Order. Bayer's Motion is unduly prejudicial because the time to amend pleadings expired long ago, fact and expert discovery is closed (including third-party discovery of Drs. Tomic and Harris and some inventors), and dispositive motions were fully briefed before Bayer filed its Motion. (D.I 293 ¶ 2; D.I. 392 ¶¶ 2, 6; D.I. 445 at 2.) Bayer seeks to side-step these realities by alleging "confusion" about and conflation of constitutional and statutory standing (Br. at 6, 7 & n.2), and by arguing that Bayer's failure to adhere to the Federal Rules and Scheduling Order should not "thwart" (*id.* at 2) review on the merits. To the contrary, Bayer's untimely Motion that introduces a theory that it did not plead should be stricken.

**I.     Bayer Has a Heavy Burden to Prove Inventorship**

Bayer makes the bold assertion that "Bayer is a co-owner of [the patents-in-suit]," and argues that its Motion seeking to change inventorship (a prerequisite to the assertion) is not time-barred because Plaintiffs "bear[] the burden to establish standing at each stage of litigation." Br. at 1. As an initial matter, "[t]he inventors as named in an issued patent are presumed to be

correct," and a party alleging "non-joinder of inventors must meet the heavy burden of proving its case by clear and convincing evidence." *Eli Lilly & Co. v. Aradigm Corp.*, 376 F.3d 1352, 1358 (Fed. Cir. 2004). Further, Bayer's arguments amount to improper burden-shifting:

> [Defendant] impermissibly, albeit creatively, attempts to flip the burden of proving inventorship to [plaintiff] by arguing that the burden for establishing standing "lies squarely on the party claiming subject matter jurisdiction." Here, [plaintiff] has established standing by virtue of its status as sole assignee . . . .

*Polyzen, Inc. v. RadiaDyne, LLC*, No. 14-323, 2014 WL 7239889, at *2 (E.D.N.C. Dec. 18, 2014). Bayer's § 256 allegations do not impose a burden on Plaintiffs to demonstrate standing.

## II. Bayer Failed to Demonstrate that Its Motion Implicates Rule 12(b)(1)

### A. Bayer Cannot Distinguish *Lone Star* and *Schwendimann*

Bayer's premise that its Motion is a timely Rule 12(b)(1) motion fails because controlling law establishes that a § 256 motion does not implicate standing or jurisdiction—the basis for a Rule 12(b)(1) motion. (D.I. 490 at 2 (citing *Schwendimann v. Arkwright Adv. Coating Inc.*, 959 F.3d 1065, 1071 (Fed. Cir. 2020); *Lone Star Silicon Innovations LLC v. Nanya Tech. Corp.*, 925 F.3d 1225, 1235-36 (Fed. Cir. 2019)). Bayer attempts to side-step this fatal issue by arguing that its Motion does not concern "statutory standing," but instead implicates constitutional standing. Br. at 6-7. Bayer's attempt to avoid *Lone Star* and *Schwendimann* is unavailing. These 2019 and 2020 Federal Circuit decisions make clear that "whether a party possesses all substantial rights in a patent does not implicate standing or subject matter jurisdiction." *Schwendimann*, 959 F.3d at 1071 (relying on *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014), and further holding "the court has both the statutory and constitutional authority to adjudicate" matters pleaded under the Patent Act). And *Lone Star* expressly found that "although [Plaintiff] does not possess all substantial rights in the asserted patents its allegations still satisfy Article III." 925 F.3d at 1236. Thus, to the extent that prior cases may have found

2

constitutional standing implicated by ownership disputes, they do not control.

Bayer further argues that Plaintiffs conflate the standing requirement of § 281 with Article III jurisdiction.  Br. at 6.  Not so.  The standing issues raised in Bayer's Motion mirror issues that were: (i) analyzed in *Lone Star* and *Schwendimann*; and (ii) found not to implicate Article III jurisdiction.  Bayer's Motion argues that, if it were granted, Plaintiffs would lack standing because Plaintiffs would be unable to join a patent owner.  Motion at 13 ("Standing . . . stems from the Patent Act.  Because all co-owners of a patent must consent to join a suit, one co-owner has the right to impede the other co-owner's ability to sue infringers by refusing to voluntarily join in such a suit."); *id.* at 20 ("Bayer is a joint owner by assignment of Dr. Tomic's interest in all asserted patents and neither Bayer nor Dr. Harris (or his rightful assignee) is a named plaintiff.").  This is the same as the § 281 issue addressed in *Lone Star*.  There, the Federal Circuit analyzed whether subject matter jurisdiction would be violated when one patent owner was not joined as a plaintiff.  *Lone Star*, 925 F.3d at 1235.  *Lone Star* determined that this situation did not implicate subject matter jurisdiction or standing, and therefore directly rebuts Bayer's assertion that its Motion raises a jurisdictional issue.  *Id.*

### B. Bayer's New Arguments Do Not Deprive the Court of Jurisdiction

In an attempt to distinguish *Lone Star* and *Schwendimann*, Bayer pivots from the statutory standing arguments raised in its Motion—i.e., the alleged failure to join a patent owner (Motion at 20)—to assert a lack of constitutional standing because it, as an alleged co-owner, purportedly has the authority to practice the patent.  Br. at 4 (asserting that there is no standing "because Bayer is a co-owner and cannot be 'excluded' by Plaintiffs from conduct that Bayer has the legal right to practice" (emphasis omitted)).  This new argument is similarly unavailing.

Bayer's argument wrongly assumes that it is a co-owner of the patents-in-suit, even

3

though it has no ownership rights to them and inventorship is presumed to be correct. *See* Section I, *supra*. A prerequisite to Bayer's co-owner argument is that Bayer must first successfully assert a § 256 correction of inventorship claim. Br. at 1. If the Court lacked constitutional standing to adjudicate the case—as Bayer alleges (Br. at 3-4)—then it could not grant a request under § 256. Conversely, if the Court has jurisdiction to hear the § 256 motion, then it is not properly raised under Rule 12(b)(1). Regardless, the § 256 allegations fall squarely under the Patent Act and would therefore would not deprive the Court of jurisdiction. *Exxon Chem. Patents Inc. v. Lubrizol Corp.*, 935 F.2d 1263, 1265-66 (Fed. Cir. 1991) ("When a challenge to jurisdiction is in fact directed only to the merits of a question of patent law, it is proper for the district court to accept jurisdiction under § 1338(a).").

Similarly, Bayer's reliance on *Drone Techs., Inc. v. Parrot S.A.*, 838 F.3d 1283, 1292 (Fed. Cir. 2016) is misplaced. Br. at 5. In *Drone*, the court found that the named inventor was presumed to be correct and the court declined to pursue "a substantive examination of inventorship in order to resolve an issue of standing in an infringement action . . . ." *Id.* at 1292-93 (emphasis omitted). Thus, the district court had jurisdiction to hear the suit. *Id.* at 1294.

As to Bayer's argument that § 1338 jurisdiction does not satisfy constitutional standing (Br. at 7 n.7), Bayer ignores that there is a case or controversy for purposes of Article III because Bayer is accused of infringing the patents-in-suit "without authority." § 271. "As long as a plaintiff alleges facts that support an arguable case or controversy under the Patent Act, the court has both the statutory and constitutional authority to adjudicate the matter." *Schwendimann*, 959 F.3d at 1071. Bayer's new assertion that it has authority under the patents as a co-owner falls squarely under § 271 of the Patent Act and therefore does not implicate jurisdiction. *Id.* Indeed, *Lone Star* made clear that disputes over whether a patentee has sufficient patent rights to sue for

4

infringement do not implicate jurisdiction. And if alleged authority under a patent removed jurisdiction, then courts would likewise lack jurisdiction over cases where a defendant asserts patent authority under a license. The Federal Rules demonstrate that this cannot be the case, as Rule 8(c)(1) identifies "license" as an affirmative defense. Thus, alleged authority under the patent is a merits issue, not a question of jurisdiction.

Despite the warning in *Lone Star* that "earlier decisions mischaracterized the effects of § 281" as implicating subject matter jurisdiction, 925 F.3d at 1235, Bayer relies entirely on case law dated before the 2019 and 2020 *Lone Star* and *Schwendimann* decisions. Br. at 3-7.

Bayer's reliance on *Acceleration Bay LLC v. Activision Blizzard, Inc.*, No. 16-453-RGA, 2017 WL 3668597, at *3-4 (D. Del. Aug. 24, 2017) misses the mark. Br. at 5-6. That case, like all others cited by Bayer, pre-dated *Lone Star*. In *Acceleration Bay*, there was a non-plaintiff licensee that had rights to sublicense the patents to the defendant. Under the pre-*Lone Star* analysis, the existence of a non-plaintiff patent owner removed standing. *Lone Star* has since made clear that disputes over the sufficiency of a plaintiff's patent rights are not jurisdictional.

Bayer also relies on *Ethicon* to argue that, where a defendant obtains patent rights, the Court lacks subject matter jurisdiction. Br. at 5. Bayer mischaracterizes *Ethicon*, which did not mention Rule 12(b)(1), standing, or jurisdiction—let alone analyze the effect of inventorship on jurisdiction. *See generally Ethicon, Inc. v. U.S. Surgical Corp.*, 135 F.3d 1456 (Fed. Cir. 1998). Instead, *Ethicon* concerned the failure to join a necessary party under Rule 19, which is a Rule 12(b)(7) defense as opposed to a Rule 12(b)(1) jurisdictional issue. *Id.* at 1472. Thus, *Ethicon* does not advance Bayer's assertion that its Motion implicates Rule 12(b)(1).

Bayer also cites *Morrow*, but that does not address the situation presented therein. Br. at 4. *Morrow* stands for the proposition that, when a plaintiff has no rights to exclude any others

5

from practicing a patent, that plaintiff—who is therefore not a patent owner—lacks standing to sue for infringement. *Morrow v. Microsoft Corp.*, 499 F.3d 1332, 1342 (Fed. Cir. 2007). Here, Plaintiffs are the assignees of record and Bayer's Motion does not challenge those exclusionary rights. Motion at 1 ("No change to the status of the originally named inventors of these two patent families is sought by this motion."). *Lone Star* distinguished *Morrow* on similar grounds, finding that the plaintiff's patent rights "distinguish Lone Star from the plaintiff in *Morrow*, who lacked the ability to grant licenses or 'forgive' infringement." *Lone Star*, 925 F.3d at 1234.

Bayer's reliance on *STC.UNM v. Intel Corp.*, 745 F.3d 940, 946 (Fed. Cir. 2014) is also unavailing. Br. at 5. *STC* had a known patent owner that would not join, whereas here Plaintiffs are all of the established patent owners. Moreover, *STC* predates *Lone Star*, which addressed the very situation in *STC*; to the extent *STC* considered jurisdiction, such law was abrogated.

In sum, Bayer's Motion is not a Rule 12(b)(1) motion, but is instead a case dispositive motion that is subject to—and violates—the Scheduling Order, under which "the deadline for case dispositive" motions expired on May 29, 2020 (D.I. 445 at 2), before the Motion was filed.

### III.   Bayer Did Not Plead a Cause of Action Under § 256

#### A.   Bayer Admits that Its § 256 Claim Is New

Bayer concedes that it did not conceive of a § 256 claim until it responded to Plaintiffs' May 29, 2020 summary judgment motion seeking dismissal of Bayer's §§ 102(f) and (g) claims:

> [Plaintiffs' §§ 102(f) and (g) summary judgment motion] forced Bayer to engage in an extensive analysis of the massive amount of evidence on this topic in its opposition to Plaintiffs' motion for summary judgment. That analysis led to the inescapable conclusion that the legal standard for inventorship correction (which differs from these other defenses) has been met and is ripe for hearing.

Br. at 10; *see also id.* at 2. Bayer cannot say that it pleaded a claim of which it was not aware.

This stunning admission is also confirmed by the record. It was not until after Plaintiffs'

6

summary judgment motion was fully briefed that Bayer attempted to pursue its § 256 claim by obtaining the purported June 24, 2020 patent assignment from Dr. Tomic.  (*See* D.I. 490 at 6 (citing D.I. 485, Ex. 1 at 1)).  Had a § 256 claim been in the case, Bayer had no justification for not obtaining this purported assignment sooner given that Bayer was in contact with Dr. Tomic.  This underscores Bayer's failure to plead a § 256 claim.

Further, Bayer's allegation that its § 256 claim deprives the Court of subject matter jurisdiction was waived, and is not properly the basis for a Rule 12(b)(1) motion now.  Bayer's pleadings (both the operative pleadings and those that Judge Fallon recommends dismissing (D.I. 494 at 1)) state that Bayer "will not contest subject matter jurisdiction" and admit that "[t]his Court has subject matter jurisdiction over this action."  (D.I. 61 at 2 ¶ 9, 25 ¶ 6; D.I. 333 at 2 ¶ 9, 29 ¶ 6; D.I. 381 at 2 ¶ 7, 18 ¶ 6; C.A. 18-1355, D.I. 13 at 2 ¶ 7, 17 ¶ 6.)

      **B.**      **Bayer Failed to Identify a § 256 Claim Within Its Pleadings**

The inventorship claims in Bayer's pleadings are limited to §§ 102(f) and (g) and, in contrast to its Motion, seek to invalidate the patents in suit.  (D.I. 490 at 4-5.)  Bayer admits that these defenses differ from a § 256 claim (Br. at 10 ("the legal standard for inventorship correction . . . differs from these other defenses")), but argues that it "can plead defenses in the alternative."  *Id.*  But Bayer did not plead a § 256 claim at all, let alone in the alternative.

Bayer does not point to any language in its pleadings requesting to add Drs. Tomic and Harris as co-inventors alongside the named inventors.  Bayer all but admits that there are no such pleadings, arguing (wrongly) that it is a "potential conclusion that can be drawn from the facts at hand."  Br. at 10.  It is not Plaintiffs' duty to guess at claims that Bayer may raise.  Bayer was required to identify its claims and defenses in its pleadings.  Fed. R. Civ. P. 8(a)(3); Fed. R. Civ. P. 8(c); 35 U.S.C. § 282(b)(4).  Thus, Bayer waived any such cause of action.  (D.I. 490 at 5-6.)

Moreover, the co-inventorship Bayer now asserts in its § 256 Motion is inconsistent with Bayer's allegations throughout this case. To be co-inventors, Drs. Tomic and Harris must have engaged in "collaboration or concerted" efforts with the named inventors, "when the inventors have some open line of communication during or in temporal proximity to their inventive efforts." *Eli Lilly*, 376 F.3d at 1359. Bayer fails to show how this standard would be consistent with its pleadings, wherein Bayer argues that Dr. Tomic invented the subject matter of the patents-in-suit, and the named inventors derived that work from Dr. Tomic. For example:

> [S]cientists at Bayer in California, including specifically Milan Tomic, previously invented the subject matter claimed by the '223 patent. (D.I. 333 ¶ 174.)

> [S]cientists at Bayer in California, including specifically Milan Tomic, previously invented the subject matter claimed by the '440 patent. (D.I. 381 ¶ 184.)

*See also* D.I. 463, Bayer's MSJ Resp. at 24 ("Every aspect of these claims was conceived by Dr. Tomic, pursued by Bayer, and communicated to Nektar . . . .") Bayer's prior allegations and factual analysis cannot be reconciled with this new § 256 claim of co-inventorship.

Bayer also does not dispute that a § 256 claim is a separate cause of action. Br. at 8-9. Instead, Bayer relies on *Hydril* to argue that it need only plead incorrect inventorship to raise a § 256 claim. *Id.* at 9. But *Hydril*, an unpublished, non-precedential decision, does not relieve Bayer of the pleading requirements. *Hydril* addressed whether the plaintiff had sufficiently pled correction of inventorship under § 256. *Hydril Co. v. Baker Hughes Inc.*, No. 96-1288, 1997 WL 469722, at *4 (Fed. Cir. Aug. 19, 1997). There, even though the plaintiff took a consistent position throughout the case and before the PTO, the Federal Circuit found it to be "a close call." *Id.* In *Hydril* the plaintiff: (i) asserted that a named inventor was not a true inventor; (ii) provided testimony that the individual was not an inventor; (iii) filed an amended complaint noting that it had asked the PTO to remove the individual as an inventor; and (iv) explicitly

8

raised § 256 in an opposition. *Id.* at *4-5. *Hydril* is distinguishable. Here, the pleadings and allegations propose only that Bayer's Dr. Tomic is the sole inventor of the patent-in-suit, which is contrary to Bayer's new § 256 claim that Drs. Tomic and Harris were co-inventors with the named inventors. Thus, *Hydril* does not relieve Bayer of its obligation to plead a § 256 claim.

Finally, Bayer's assertion that it pled "lack of standing" is likewise unavailing. Br. at 8. Bayer at best pleads statutory standing, which does not implicate subject matter jurisdiction under *Lexmark* and *Lone Star*. 925 F.3d at 1235-36. This is confirmed by Bayer's admissions, in each of its pleadings, that: (i) subject matter jurisdiction is correct and; (ii) Bayer "will not contest subject matter jurisdiction." (*See, e.g.*, D.I. 61 at 2 ¶ 9, 25 ¶ 6; Section III.A, *supra*.)

## IV.   Bayer Makes No Attempt to Show Diligence to Amend the Case Schedule

Bayer offers only a single conclusory sentence alleging diligence, stating that "Bayer has diligently alerted Plaintiffs to its intent to assert incorrect inventorship and lack of standing." Br. at 9. This does not satisfy the requirement that Bayer must have been diligent in amending the pleadings and/or Scheduling Order to: (i) bring its § 256 claims after the October 11, 2019 pleading deadline (D.I. 293 ¶ 2); and (ii) file its Motion after the May 29, 2020 case dispositive motion deadline (D.I. 445 at 2). *See Bayer HealthCare LLC v. Baxalta Inc.*, No. 16-1122-RGA, 2019 WL 291143, at *2 (D. Del. Jan. 22, 2019) ("In contrast to Rule 15(a), the good cause standard under Rule 16(b) hinges on diligence of the movant, and not on prejudice to the non-moving party."). Moreover, Bayer admits that its Motion is based on information that was in its possession. Br. at 2, 10. *See E.I. DuPont de Nemours & Co. v. Unifrax I LLC*, No. 14-1250-RGA, 2017 WL 1822279, at *2 (D. Del. May 5, 2017) (finding no diligence where plaintiff was "in possession of the facts essential to bring [its] claim well prior to the amendment deadline").

In addition to failing to demonstrate the good cause and diligence to seek amendment of

9

the Scheduling Order, Bayer is wrong in arguing that the only prejudice to Plaintiffs is preparing an opposition to Bayer's Motion. Br. at 11. Plaintiffs planned their case based on Bayer's pleadings, arguments, contentions, and allegations, none of which asserted that Drs. Tomic and Harris are allegedly co-inventors of the patents-in-suit. Had Bayer pleaded a § 256 cause of action alleging co-inventorship, Plaintiffs would have taken fact discovery and produced expert testimony accordingly. But Bayer did not assert § 256 claims until its Motion. The Scheduling Order should not be amended to allow for Bayer's unduly prejudicial and untimely Motion.

## V.     Bayer Cannot Amend the Pleadings

Bayer proposes under Rule 15(b)(2) that "[a] party may move—at any time, even after judgment—to amend the pleadings to conform them to the evidence . . . ." Br. at 9 (alterations in original). But Bayer's quote is incomplete—and it omits a critical pre-condition of Rule 15(b)(2), namely that it is "For Issues Tried by Consent." No such consent exists here. Bayer also implores in a single sentence that "Bayer should be permitted to amend its pleadings." Br. at 9. This is not a proper method to seek amendment to the schedule or pleadings. When a deadline has expired (e.g., the pleadings and dispositive motion deadlines), Bayer must make a separate motion and demonstrate excusable neglect. Fed. R. Civ. P. 6(b)(1)(B); *Drippe v. Tobelinski*, 604 F.3d 778, 782-86 (3d Cir. 2010) (reversing a court's decision to entertain a belated dispositive motion where the court, in violation of Rule 6(b), granted a post-deadline extension in the absence of a formal motion); *see also* D. Del. LR 15.1 (amending the pleadings requires a motion that attaches a copy of the proposed amended pleading). Bayer's one-line request does not meet this standard, nor can Bayer establish excusable neglect.

## CONCLUSION

As stated above and in Plaintiffs' motion (D.I. 490), Bayer's Motion should be stricken.

10

| | |
|---|---|
| *Of Counsel:* | */s/ Kelly E. Farnan* |
| | Frederick L. Cottrell, III (#2555) |
| Edgar H. Haug | Kelly E. Farnan (#4395) |
| Sandra Kuzmich | Nicole K. Pedi (#6236) |
| Richard F. Kurz | Richards, Layton & Finger, P.A. |
| Erika V. Selli | One Rodney Square |
| Jason A. Kanter | 920 North King Street |
| Kaitlin Abrams | Wilmington, Delaware 19801 |
| Haug Partners LLP | Tel: (302) 651-7700 |
| 745 Fifth Avenue | cottrell@rlf.com |
| New York, New York 10151 | farnan@rlf.com |
| Tel: (212) 588-0800 | pedi@rlf.com |
| ehaug@haugpartners.com | |
| skuzmich@haugpartners.com | *Attorneys for Plaintiffs* |
| rkurz@haugpartners.com | *Baxalta Inc., Baxalta US Inc.,* |
| eselli@haugpartners.com | *and Nektar Therapeutics* |
| jkanter@haugpartners.com | |
| kabrams@haugpartners.com | |

DATED: July 19, 2020

11

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on July 19, 2020, I caused copies of the foregoing document to be served upon the following via Electronic Mail:

Rodger D. Smith II
Morris, Nichols, Arsht & Tunnell LLP
1201 North Market Street
Wilmington, DE 19801

Bradford J. Badke
Sona De
Ching-Lee Fukuda
Julie L. Hsia
Timothy Q. Li
Sidley Austin LLP
787 Seventh Avenue
New York, NY 10019

Sue Wang
Saurabh Prabhakar
Sidley Austin LLP
555 California Street, Suite 2000
San Francisco, CA 94104

Lauren C. Katzeff
Lauren Cranford Katzeff
Sidley Austin LLP
1501 K Street, N.W.
Washington, DC 20005

*/s/ Kelly E. Farnan*
Kelly E. Farnan (#4395)
farnan@rlf.com