IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

BAXALTA INCORPORATED
BAXALTA US INC. and
NEKTAR THERAPEUTICS,

          Plaintiffs;

v.

BAYER HEALTHCARE LLC,

          Defendant.

Civil Action No. 17-1316-RGA

MEMORANDUM ORDER

Before me are Bayer's Motion to Correct Inventorship Pursuant to 35 U.S.C. § 256 and to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1) (D.I. 483) and Baxalta's motion to strike Bayer's motion (D.I. 490). The motions have been fully briefed (D.I. 484, 490, 497, 498, 499, 513). For the reasons set forth below, Bayer's motion is GRANTED in part and Baxalta's motion is DENIED.

I.    BACKGROUND

This case involves two patent families, the Bossard Patents[1] and the Bentley Patents.[2] The instant motions dispute the inventorship of these patent families. Previously, the parties briefed summary judgment motions which raised issues of prior inventorship under § 102(g) and derivation under § 102(f). (*See, e.g.*, D.I. 448 at 12, 19). I granted summary judgment of no

---

[1] The Bossard Patents are U.S. Patent Nos. 7,199,223; 7,863,421; 8,247,536; 8,519,102; 8,618,259; 8,889,831; and 9,999,657. (D.I. 484 at 1 n.1; D.I. 533).

[2] The Bentley Patents are U.S. Patent Nos. 7,872,072; 8,273,833; 8,809,453; and 9,187569. (D.I. 484 at 1 n.1; D.I. 533). The '072 Patent is no longer asserted in this action. (D.I. 533).

invalidity as to Bayer's derivation argument but denied summary judgment as to Bayer's § 102(g) claim. (D.I. 637 at 13, 16).  Many of the relevant factual assertions can be found in the Court's summary judgment opinion and I will not repeat them here. (*See* D.I. 637).

Before the Court's summary judgment opinion was released, Bayer moved to amend its pleadings to include correction of inventorship under § 256. (D.I. 515 at 1).  The Magistrate Judge denied Bayer's motion to amend without prejudice pending the resolution of its motion to correct inventorship and Baxalta's motion to strike. (D.I. 604 at 9-10).

## II.     LEGAL STANDARDS

### A. Inventorship

A court may order a correction of inventorship "on notice and hearing of all parties concerned." § 256(b).  However, "[t]he burden of showing misjoinder or nonjoinder of inventors is a heavy one and must be proved by clear and convincing evidence." *Hess v. Adv. Cardiovascular Sys., Inc.*, 106 F.3d 976, 980 (Fed. Cir. 1997) (quoting *Garrett Corp. v. United States*, 422 F.2d 874, 880 (Ct. Cl. 1970)).

35 U.S.C. § 116 covers joint inventorship.  To qualify as joint inventors on a patent, "each joint inventor must generally contribute to the conception of the invention." *Ethicon, Inc. v. U.S. Surgical Corp.*, 135 F.3d 1456, 1460 (Fed. Cir. 1998).  The joint inventors must have collaborated in some fashion, which is typically demonstrated by "joint behavior." *Eli Lilly & Co. v. Aradigm Corp.*, 376 F.3d 1352, 1359 (Fed. Cir. 2004).  Examples include "collaboration or working under common direction, one inventor seeing a relevant report and building upon it or hearing another's suggestion at a meeting" and the like. *Kimberly-Clark Corp. v. Procter & Gamble Distrib. Co.*, 973 F.2d 911, 917 (Fed. Cir. 1992).  The inventors do not have to work together in the same physical space or at the same time. *Falana v. Kent State Univ.*, 669 F.3d

2

1349, 1357 (Fed. Cir. 2012). Each inventor need not contribute equally. *Ethicon*, 135 F.3d at 1460. It is sufficient if a joint inventor "perform[ed] only a part of the task which produces the invention" or contributed to only a single patent claim. *Id*.

### B. Motion to Strike

Federal Rule of Civil Procedure 12(f) permits the court to strike "an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." FED. R. CIV. P. 12(f). The Third Circuit cautions that "a court should not grant a motion to strike a defense unless the insufficiency of the defense is 'clearly apparent.'" *Cipollone v. Liggett Grp., Inc*, 789 F.2d 181, 188 (3d Cir. 1986). In order to survive a motion to strike for failure to state a claim, the affirmative defense must meet the applicable pleading standard. *See Sonos, Inc. v. D&M Holdings Inc.*, 2016 WL 4249493, at *4 (D. Del. Aug. 10, 2016); *Senju Pharm. Co. v. Apotex, Inc.*, 921 F. Supp. 2d 297, 306 (D. Del. 2013). "When considering such a motion, the Court must construe all the facts in favor of the nonmoving party [] and deny the motion if the defense is sufficient under law." *Proctor & Gamble Co. v. Nabisco Brands, Inc.*, 697 F. Supp. 1360, 1362 (D. Del. 1988).

## III. DISCUSSION

### A. Correction of Inventorship

Bayer's motion seeks to add former Bayer employee Dr. Milan Tomic and former Shearwater President Dr. Milton Harris as inventors to both the Bossard and Bentley Patent families. (D.I. 484 at 1-2). To that end, Bayer requests an evidentiary hearing so that it may provide evidence in support of its motion. (*Id.* at 1). I am familiar with much of the factual matter at issue as I considered it on summary judgment in relation to Bayer's derivation defense.

3

(*See* D.I. 637).[3] It is my understanding that Bayer also asserts a § 102(g) prior invention invalidity defense against the patents-in-suit, arguing that Dr. Tomic alone made the claimed inventions in 1995 or earlier.

Baxalta argues that permitting a pre-trial hearing on inventorship would disturb its right to a jury trial on issues of invalidity. (D.I. 499 at 8-9) (citing *Shum v. Intel. Corp.*, 499 F.3d 1272, 1279 (Fed. Cir. 2007); *St. Jude Med., Inc. v. Access Closure, Inc.*, 2010 WL 4880806, at *2 (W.D. Ark. Nov. 23, 2010)). I agree. As Bayer's § 102(g) defense remains,[4] I do not see how I could adjudicate Dr. Tomic's purported conception of the inventions in determining correction of inventorship without intruding on the same facts relevant to § 102(g). Indeed, Bayer has not addressed § 102(g) in its briefing.[5]

Accordingly, I will follow an approach similar to that followed by several other courts; I will postpone any inventorship hearing until the jury has made its relevant factual determinations under § 102(g)(2). *See Bianco v. Globus Medical, Inc.*, 30 F. Supp. 3d 565, 569-70 (E.D. Tex. 2014) (deciding inventorship following a jury trial and permitting the parties to submit additional materials); *St. Jude Med.*, 2010 WL 4880806, at *3 (holding that a jury should determine the facts related to inventorship). Thus, I will grant Bayer's request for a hearing on inventorship on

---

[3] I do not believe the Court's ruling on derivation and its ruling today are inconsistent. Derivation on summary judgment concerned only claims 16, 19, and 23 of the '536 Patent. Bayer's arguments failed because the record did not demonstrate an enabling communication specific to the three relevant claims had occurred. (D.I. 637 at 16). To demonstrate inventorship, Bayer may attempt to prove that Drs. Tomic and Harris contributed to a different claim limitation that was not previously considered by the Court.

[4] I note there is also a pending motion for reconsideration implicating § 102(f) prior art and § 103. (D.I. 657).

[5] Bayer argues that the Seventh Amendment right to a jury trial would not be disturbed with respect to its § 102(f) invalidity defense because the Court's grant of correction would void any possibility of invalidity under § 102(f). (D.I. 513 at 6). Bayer did not address Baxalta's assertion that its remaining § 102(g) defense also presents a Seventh Amendment issue.

the understanding that it will occur (to the extent necessary in light of the evidence presented at trial and the jury's verdict) following the conclusion of the jury trial. I note that I am not making any finding as to the relative merits of Bayer's argument for correction or Baxalta's objections.

Baxalta also argues that Bayer is barred by laches from raising the inventorship issue at all. (D.I. 499 at 6-7). A presumption of laches applies six years after the "omitted inventor knew or should have known of the issuance of the patent." *Pei-Herng Hor v. Ching-Wu Chu*, 699 F.3d 1331, 1335 (Fed. Cir. 2012) (quoting *Adv. Cardiovascular Sys., Inc. v. Scimed Life Sys., Inc.*, 988 F.2d 1157, 1163 (Fed. Cir. 1993)). This presumption places the burden on Bayer to come forward "with evidence that the delay is reasonable or excusable." *Adv. Cardiovascular Sys.*, 988 F.2d at 1163. The ultimate burden of proof, though, would rest with Baxalta. *Id*.

As on summary judgment, the parties vigorously dispute when Bayer obtained knowledge of the patents-in-suit. (*See* D.I. 499 at 7-8; D.I. 513 at 1-3). As there are numerous factual issues outstanding, laches is not appropriate for resolution on the briefing accompanying this motion. Baxalta may renew its objection at the hearing if it so chooses.

**B. Motion to Strike**

In addition to objecting to Bayer's motion, Baxalta has filed a separate motion to strike. (D.I. 490). Baxalta's motion is primarily based on the argument that Bayer's motion violates the deadline for case dispositive motions in the Court's scheduling order and, alternatively, Bayer cannot demonstrate the good cause required to amend its pleadings to add inventorship. (*Id*. at 1, 7).

Baxalta argues that, while Bayer's motion is styled as a Rule 12(b)(1) motion, the arguments asserted do not implicate subject matter jurisdiction. (D.I. 490 at 1-2). Baxalta also urges the Court to construe Bayer's motion according to its substance rather than its label and

classify it as an attempt to modify the court's scheduling order. (*Id*. at 3). Bayer replies that its Rule 12(b)(1) motion is proper because the case must be dismissed for lack of standing when a co-owner of the patent was omitted as a plaintiff. (D.I. 497 at 5 (citing *STC.UNM v. Intel Corp.*, 754 F.3d 940, 946 (Fed. Cir. 2014)).

      I agree with Baxalta that Bayer's motion does not implicate this Court's subject matter jurisdiction. In two recent decisions, the Federal Circuit clarified that statutory prerequisites under § 281 are not jurisdictional. *See Schwendimann v. Arkwright Adv. Coating, Inc.*, 959 F.3d 1065, 1071 (Fed. Cir. 2020); *Lone Star Silicon Innovations LLC v. Nanya Tech. Corp.*, 925 F.3d 1225, 1235 (Fed. Cir. 2019). While Bayer argues that, in the event that Article III standing is not at issue, I should proceed to the merits (D.I. 497 at 6 n.1), I cannot do so until the inventorship hearing occurs. As such, Bayer may reassert any objections relating to statutory standing following the conclusion of the hearing.

      The only remaining question is whether Bayer properly raised the issue of inventorship in its pleadings. Bayer argues that its pleadings raised inventorship, primarily because its Third Amended Answer (D.I. 333) uses the phrase "Incorrect Inventorship" in the heading of its Fourth Affirmative Defense, which references § 102(f) and § 102(g). (*Id*. at 26). Elsewhere in the Amended Answer, Bayer states that if the applicants for the asserted patents had disclosed Dr. Tomic's 1990s work to the PTO, the PTO "would have required the Applicants to correct inventorship to add Milan Tomic as the inventor." (*Id.* at 48; *see also* D.I. 381 at 39). Similarly, the Amended Answer states, "To the extent Michael Bentley is properly named as an inventor on the Asserted Bossard Patents based on PEGs that he worked on with Milton Harris, applicants' statement of inventorship is false because it omits Dr. Harris as a named Inventor." (D.I. 333 at 56; *see also* D.I. 381 at 49).

Baxalta argues that Bayer's inventorship claim is new and inconsistent with the facts stated in the complaint. As Baxalta points out, Bayer's pleadings assert that Dr. Tomic previously invented the subject matter of the '223 Bossard Patent, which appears to conflict with Bayer's claims that Dr. Tomic and Dr. Harris were engaged in a collaborative effort during this period. (D.I. 498 at 8). Bayer states that the fact that Dr. Tomic conceived of the inventions does not preclude the fact that both he and Dr. Harris are unnamed inventors. (D.I. 497 at 11 n.5).[6] Further, Bayer states that § 102(f), § 102(g) and inventorship correction are not inconsistent defenses and are all conclusions that may be drawn from the facts at hand. (*Id*. at 10).

The primary case Bayer cites in support of its position is *Hydril Co. v. Baker Hughes Inc.*, a non-precedential decision of the Federal Circuit. (*Id*. at 9). There, the Court concluded that, where a Plaintiff did not plead § 256 but instead incorrectly sought correction of inventorship before the PTO, the defense was not waived. 1997 WL 469722, at *4-5 (Fed. Cir. Aug. 19, 1997). The Court explained that given that Plaintiff eventually did "explicitly bring § 256 to the attention of the district court [making the Court] aware of § 256 and, presumably, that it had the power to correct inventorship." *Id*. at *5. At a minimum I believe that Bayer's pleadings put Baxalta on notice that inventorship was disputed and, subsequently, Bayer has brought inventorship to the Court's attention. Following the reasoning in *Hydril*,[7] I will not find that Bayer has waived its right to move for a correction of inventorship hearing.

---

[6] It is not entirely clear if Bayer asserts that Dr. Harris should be named an inventor because he and Dr. Tomic collaborated in the 1990s or because Dr. Harris took Dr. Tomic's research and conveyed it to named inventors, adding his own input.

[7] The parties have provided no better authority than *Hydril*. I note that Judge Fallon has also found *Hydril* helpful. (D.I. 604 at 9-10).

7

## IV. CONCLUSION

For the reasons stated above, Bayer's motion for a hearing on inventorship is **GRANTED** and its motion to dismiss under Rule 12(b)(1) (D.I. 483) is **DENIED**. Baxalta's motion to strike (D.I. 490) is **DENIED**. Any arguments of the parties not addressed herein are preserved.

IT IS SO ORDERED this 18th day of March 2021.

                                                    /s/ Richard G. Andrews
                                                    United States District Judge